THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHRIST COULIDES, Appellant.

County Court, Broome County, June 29, 1933.

*Joseph E. North,* for the appellant.

*Frank L. Wooster, District Attorney [William H. Parker, Assistant District Attorney,* of counsel], for the respondent.

TURK, J. This is an appeal from a conviction had before the police justice of the village of Endicott on the 9th day of April, 1932, for violation of section 1 of an ordinance of the village of Endicott, Broome county, N. Y., entitled " An ordinance to aid in the promotion of public welfare by prohibiting the manufacture and sale or transportation of intoxicating liquors within the said village." Following a trial before the police justice the defendant was adjudged a disorderly person and guilty of disorderly conduct. The ordinance in question, passed by the board of trustees of the village of Endicott, reads, in part, as follows: " Section 1. The manufacture, sale, furnishing, or transportation of intoxicating liquor within this village of Endicott is prohibited. Section 2. Any person violating any of the provisions of this ordinance shall incur and forfeit a penalty of $100 and in addition thereto any violation of any of the provisions of this ordinance shall constitute disorderly conduct, and any person violating the same shall be a disorderly person."

There was sufficient evidence introduced at the trial to justify a decision that, at the time charged in the information, the defendant was engaged in both the manufacture and sale of intoxicating liquors in the village of Endicott. In fact, that question is not seriously disputed by the appellant. The appellant does contend, however, that the ordinance under which he was convicted was unconstitutional and that is the whole question to be decided in this case.

The preamble to the ordinance reads as follows: " The Board of Trustees of the Village of Endicott, New York, pursuant to the authority vested by subdivision 59 of section 89 of the Village Law of the State of New York and of Acts amendatory thereof or supplemental thereto, does hereby enact and adopt the following ordinance: " Subdivision 59 of section 89 of the Village Law reads as follows: " The board of trustees * * * may take all measures, do all acts, and enact any ordinances, not inconsistent with existing law which shall be deemed expedient or desirable for the good government of the village, its management and business, the protection of its property, safety and health of its inhabitants, the protection of their property, the preservation of peace and good order, the suppression of vice, benefit of trade, the preservation and protection of the public streets, the preservation of health, the prevention and extinguishment of fires, and may generally exercise all the powers granted to the village." It is from this provision of the Village Law that the village board claims to have received

authority to enact the ordinance in question. The ordinance is, therefore, enacted pursuant to general authority and not under specific authority of the Legislature. Before legislative authority to enact an ordinance can be said to be specific, a grant must define " its details and mode of enforcement." (*People ex rel. Knoblauch* v. *Warden*, 216 N. Y. 154.) The power is general when the manner of exercising it is not specific. (*Village of Carthage* v. *Frederick*, 122 N. Y. 268.) Where an ordinance is enacted in pursuance to general authority, it may be opposed as unreasonable and evidence may be introduced on that question. If, as stated in *Safee* v. *City of Buffalo* (204 App. Div. 561), " it appears there is no evil or no reasonable relation between the evil and the remedy, the court may say the ordinance is void. Conversely, if it appears that there is reasonable ground to believe the evil exists, even though there be ' earnest conflict of serious opinion ' about it; and if the remedy is fairly adapted to cure the evil without oppression, discrimination or confiscation, then it is the duty of the court to hold it good."

We may then well ask, " Is the manufacture and sale of intoxicating liquor in violation of the National Prohibition Act, in a private house in the village of Endicott, a menace to the good government of the village, or, bearing in mind that the liquor in question was manufactured in an open crock, was it a menace to the public health of the village and was the suppression thereof expedient and desirable for the good government of the village, for the protection and safety and health of its inhabitants and for the preservation of the peace and good order? "

It cannot be said that this ordinance was inconsistent with existing law, for there was no law at that time in the State of New York governing the sale and transportation of liquor. The Eighteenth Amendment of the Constitution of the United States operates throughout all of the territorial limits of the United States. It " binds all legislative bodies, courts, public officers and individuals within those limits, and by its own force invalidates every legislative act — whether by Congress, by a state legislature or by a territorial assembly — which authorizes or sanctions what this section prohibits." (*National Prohibition Cases*, 253 U. S. 350.) Each State was empowered, for purposes of enforcement, to declare that the prohibited acts might constitute offenses against its own peace and dignity; and in accordance therewith the State of New York passed an act which was commonly known as the Mullan-Gage Act. This was in effect until 1923 when it was repealed by the Legislature of the State of New York. In *People* v. *Vandewater* (250 N. Y. 83) Judge LEHMAN said: " We recognize that

the repeal of the State Enforcement Act has been sometimes regarded as a legislative declaration that the policy of the National Enforcement Act is not in accord with the public policy of the State. Doubtless there are many citizens who regard the 18th Amendment as wrong in principle and pernicious in practice." This cannot, however, be said to be an existing law conflicting with the ordinance in question. Judge LEHMAN further pointed out that " opponents and supporters of Prohibition are alike vociferous in their alarm of the debauchery of morals, the injury to health, the disturbance of the peace of the State which flow from the maintenance of illicit drinking places. None can doubt that from their nature such drinking places are an injury to the State." In a concurring opinion in the case of *People* v. *Vandewater*, Judge CRANE said: " The maintenance of a ' speakeasy ' or a saloon for the sale of intoxicating liquors is the doing of an act which endangers the health of the persons taking or buying liquor. The only justification for the 18th Amendment and the National Prohibition Act is that intoxicating liquors are injurious to health. For this reason their sale has been prohibited." It may, therefore, then be said to be the established law of this State that an ordinance or an act which attempts to prohibit the manufacture and sale of intoxicants contrary to the provisions of the Eighteenth Amendment is an ordinance or act desirable for good government, and for the preservation of the health of the inhabitants of a municipality, and clearly within the powers delegated to a village under the provisions of the Village Law.

It cannot be said to be a novel thing to delegate such authority to the village, for we find that during the year 1785 the Legislature, by chapter 83, gave the city of Hudson power to make by-laws relative to the restraining of swine operating within the limits of said city and " relative to anything whatsoever which may concern the good Government and police of the said City." The authority given the city of Hudson in 1785 was at a time when the Constitution was silent upon the organization and police regulations of municipalities, but the right of the Legislature to delegate " police power " to municipalities was well recognized at that early date. In fact, police power was well known to common law and municipalities have exercised this power from the earliest period of time by the enactment of rules or regulations to preserve order and provide for the general welfare of the residents of those municipalities. Since the incorporation of the city of Hudson, a new Constitution has come in force in the State of New York which expressly makes it the duty of the Legislature to provide for the organization or incorporation of cities and villages (State Const.

art. 12), but the power to regulate the conduct of the citizens for the benefit of good government and the protection of the health of the people is a delegation of the police power of the State government and whatever reasonably tends to make regulation effective is a proper exercise of that power. (*City of Buffalo* v. *Stevenson*, 207 N. Y. 258.) " The legislative or police power is a dynamic agency, vague and undefined in its scope, which takes private property or limits its use when great public needs require. * · * * Either the rights of property and contract must, when necessary, yield to public convenience, advantage and welfare, or it must be found that the State has surrendered one of the attributes of sovereignty for which governments are founded and makes itself powerless to secure to its citizens the blessings of freedom and to promote general welfare." (*People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429.)

Neither is police power limited entirely to regulations designed to promote public health, public morals or public safety, or to the suppression of what is offensive, but extends to so dealing with conditions that exist as to bring out of them the greatest welfare to the people. (*Bacon* v. *Walker*, 204 U. S. 311.)

The validity of an ordinance designed to promote public welfare and to protect the safety and health of the people affected thereby must depend upon the circumstances of each case, and the character of the regulation for the purposes of determining whether it is arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. (*C., B. & Q. Railway Co.* v. *Drainage Commissioners*, 200 U. S. 561.) Changing economic conditions, temporary or permanent, may make necessary or beneficial the right of public regulation under police power, and while the validity of police regulation must not be decided upon popular opinion, it has been put forth in aid of what is sanctioned by usage or held by the prevailing morality or strong or preponderant opinion to be greatly and immediately necessary to public welfare. (*Noble State Bank* v. *Haskell*, 219 U. S. 104.)

Having in mind that the appellant at the time charged in the complaint was engaged in an illegal occupation, an occupation which, as has been said by the Court of Appeals of the State, " endangers the health of persons " affected thereby; that he was doubtless manufacturing his wares in an unsanitary manner; that authority is given to the village of Endicott to enact ordinances for the protection of health and for the good government and good order of the village by the police power vested in the State; that the ordinance is not contrary to any existing law but does in fact follow the spirit and purpose of the Eighteenth Amendment.

of the Constitution of the United States, I find that this ordinance does not violate any of the provisions of either the State or the Federal Constitution. I also find that it is a reasonable remedy fairly adapted to cure the condition which existed without oppression, discrimination or confiscation.

The record discloses no error that has been harmful to the appellant and the judgment of the trial court should, therefore, be affirmed.

Enter order accordingly.