STATE EX REL. JOE J. PAVLIK v. MICHAEL J. JOHANNES.[1]

March 15, 1935.

No. 30,159.

[1]Reported in 259 N. W. 537.

*R. S. Wiggin,* City Attorney, *John F. Bonner,* Assistant City Attorney, and *Thomas E. Latimer,* for appellant (respondent below).
*M. H. Strothman, Jr.,* for respondent (relator below).

LORING, JUSTICE.

This appeal involves the constitutionality of § 11 of an ordinance passed by the city council of Minneapolis on March 9, 1934. This section of the ordinance provides:

"No such establishment, barber shop or barber school licensed hereunder shall be kept open for business before the hour of 8:00 a. m. or after the hour of 6:30 p. m. of any day, except that on Saturdays, and days preceding legal holidays as defined by the statutes of Minnesota, such places may remain open for business until the hour of 8:00 p, m."

Relator operated a barbershop in Minneapolis and was arrested for failure to observe the closing hour therein prescribed. Upon his arrest relator obtained a writ of *habeas corpus,* and, after a return was filed by respondent, a hearing was had thereon. Relator contends that the act is repugnant to the state and federal constitutions [Minn. Const. art. 1, § 7; U. S. Const. Amend. 14] and is not a proper exercise of the police power; is arbitrary, discriminatory, and unreasonable and demonstrably irrelevant to any proper legislative object and consequently that it deprives him of his liberty and of his property without due process of law. After hearing the court ordered that relator be released from custody, and from that order this appeal is taken.

A long line of decisions emanating from the Supreme Court of the United States state and restate the doctrine upon which the police power of the states is founded. That doctrine, too well settled to admit of doubt, is that the police power of a state may be invoked to regulate private enterprise whenever the general welfare of the people is to be furthered or protected, and the legislature has a large discretion to determine not only what the best interests of the public require but the manner in which such interest may best

be protected. A few examples of the wide scope of subjects upon which the police power has been exercised and subjected to regulatory legislation may be found in the following cases: Thomas Cusack Co. v. City of Chicago, 242 U. S. 526, 37 S. Ct. 190, 61 L. ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594 (billboards); Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. ed. 385 (fisheries); Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. ed. 499 (grazing of sheep); Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. ed. 923; and Soon Hing v. Crowley, 113 U. S. 703, 5 S. Ct. 730, 28 L. ed. 1145 (regulating operating hours of laundries). As was said in People v. Coulides, 148 Misc. 292, 296, 265 N. Y. S. 765, 770:

"Neither is police power limited entirely to regulations designed to promote public health, public morals or public safety, or to the suppression of what is offensive, but extends to so dealing with conditions that exist as to bring out of them the greatest welfare to the people."

It is a fundamental principle of constitutional law that every holder of property, no matter how absolute his title, holds it subject to the police power of the state. The police power embraces all regulation that seeks to preserve order, safety to its citizens, and the general welfare. Persons and property are subject to restraints and burdens which the legislature may impose upon them in furtherance of the common good; and, although the exercise of the power may cause great inconvenience to an individual or group of individuals and may curtail the use or depreciate the value of property, if the measure tends to accomplish the purpose of its enactment and does not unreasonably exceed the needs of the occasion, is not arbitrary, unreasonable, or capricious, it is a valid exercise of the police power. On the other hand, the United States Supreme Court has held that every state power is limited by the inhibitions of the fourteenth amendment. Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201. Speaking of the right of regulation under the police power, this court in State ex rel. Wilcox v. Ryder, 126 Minn. 95, 107, 147 N. W. 953, 958, 5 A. L. R. 1449, said:

"The measure must, on the one hand, tend to accomplish the purpose of its adoption, and, on the other, must not go beyond the reasonable demands of the occasion."

In Meyer v. Nebraska, 262 U. S. 390, 399, 43 S. Ct. 625, 626, 67 L. ed. 1042, 1045, 29 A. L. R. 1446, the Supreme Court, speaking of the requirement of due process, said:

"Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, * * * and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." (citing numerous cases) and further: "The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive, but is subject to supervision by the courts. Lawton v. Steele, 152 U. S. 133, 137, 14 S. Ct. 499, 38 L. ed. 385, 388."

Appellant contends, however, that since the recent case of Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 510, 78 L. ed. 940, 89 A. L. R. 1469, the courts no longer have a right to inquire into the reasonableness of a legislative enactment and that there is no limit to the power of the legislature to regulate business. Such a contention, if upheld, would necessitate discarding the principles set forth above, exalt the police power above all constitutional restraints, relegate the judicial branch to a position entirely subordinate to the legislative will, and ultimately put an end to American constitutional government. A careful study of the case warrants no such conclusion. The Nebbia case, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469, arose under a legislative enactment of the state of New York which resulted in a fixed price for the retailing of milk. Nebbia was arrested for violation of the act and questioned its validity. The supreme court held the act to be constitutional and not in violation of the fourteenth amend-

ment. The holding amounts substantially to this: That a legislative act which results in "price fixing" is not, under the peculiar circumstances surrounding the milk industry in New York, unconstitutional and is a valid exercise of the police power of that state. The result, although a departure from the usual field of legislative intervention, does not, however, as contended, limit the court's power to inquire into the reasonableness of a legislative act or, in our opinion, announce a new yardstick with which to measure the extent of the police power. It recognizes that in the normal situation the use of property and the making of contracts are matters of private concern and that governmental interference must not offend the due process clause.

The opinion sets out the history of the legislation there in question. The conclusions of an investigating committee were to the effect that milk was an essential food commodity, that it was necessary that it be clean and fit for consumption, and that certain safeguards were necessary to its production and handling for consumption, which greatly increased the cost of production and marketing. That the general price decline and other causes for low prices of milk had tended to the sacrifice of cleanliness and speed of delivery, which had a detrimental effect upon the commodity and tended to lessen its fitness for human consumption. To curtail these abuses and their resulting detrimental effect upon the public welfare of the people of New York the legislature enacted a statute which resulted in a minimum price being fixed for milk offered for sale at retail. It seems to us that the decision might well, under the results of this investigation, have been placed squarely on the ground that the law was a public health measure. As we read the decision, it is based on the generally accepted principles underlying the states' power to regulate business under its police power. The rules we have set forth above are substantially stated in the opinion, and the court, it seems, took every precaution to restate the fundamental law before holding that the object of the statute was a proper subject for the exercise of the police power. That there was no attempt to change the existing interpretation

of the requirements of due process is apparent from the language of the opinion [291 U. S. 525]:

"The guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. * * * The owner's rights [in private property] may be subordinated to the needs of other private owners whose pursuits are vital to the paramount interests of the community."

And it is also apparent that the court did not intend to relinquish its right to inquire into the validity of legislation of this kind when it said [291 U. S. 536]:

"And the function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory."

That such legislation may be held constitutional is a manifestation of the wisdom that created our constitution and the applicability of its provisions to changing conditions. The principles of that great instrument do not change. Economic conditions change, and as a consequence the subjects over which the police power may be exercised change. But simply because changing conditions make it necessary to extend its application to cases which, under other conditions, would be an unreasonable, arbitrary, and capricious invasion of private rights argues only in favor of the broad adaptability of the provisions of the fundamental law.

"The police power, in its nature indefinable, and quickly responsive, in the interest of common welfare, to changing conditions, authorizes various restrictions upon the use of private property as social and economic changes come. A restriction, which years ago would have been intolerable, and would have been thought an unconstitutional restriction of the owner's use of his property, is accepted now without a thought that it invades a private right."

State ex rel. Beery v. Houghton, 164 Minn. 146, 150, 204 N. W. 569, 570, 54 A. L. R. 1012.

If we were to attempt to formulate a comprehensive definition of what may or may not be a proper exercise of the police power we would be confronted with a task of almost insurmountable difficulty. It has been said that the power is incapable of definition. Certainly the exercise of the power may not be unreasonable, arbitrary, or capricious, and the means of its exercise must have a substantial relation to the object of its exercise. That much is everywhere conceded. But it is frequently said that to be subject to regulation by the police power the business regulated must be clothed with a public interest. Munn v. Illinois, 94 U. S. 113, 24 L. ed. 77. Certainly, to be subject to regulation, the features of a business sought to be regulated must be vital to a substantial section for the public and be of such a character as to require protection of the public from the standpoint of health or general welfare. The relationship between the regulated feature of the business and the public must be such that the public welfare demands that the business be reasonable in its conduct as it affects the public. As said by Mr. Chief Justice Taft in Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 522, 536, 43 S. Ct. 630, 633, 67 L. ed. 1103, 27 A. L. R. 1280:

"The circumstances which clothe a particular kind of business with a public interest, in the sense of Munn v. Illinois and the other cases, must be such as to create a peculiarly close relation between the public and those engaged in it, and raise implications of an affirmative obligation on their part to be reasonable in dealing with the public. * * * It is very difficult under the cases to lay down a working rule by which readily to determine when a business has become 'clothed with a public interest.' All business is subject to some kinds of public regulation; but when the public becomes so peculiarly dependent upon a particular business that one engaging therein subjects himself to a more intimate public regulation is only to be determined by the process of exclusion and inclusion and to gradual establishment of a line of distinction. * * *

It is not a matter of legislative discretion solely. It depends on the nature of the business, on the feature which touches the public, and on the abuses reasonably to be feared. To say that a business is clothed with a public interest is not to import that the public may take over its entire management and run it at the expense of the owner. The extent to which regulation may reasonably go varies with different kinds of business. The regulation of rates to avoid monopoly is one thing. ·The regulation of wages is another. A business may be of such character that only the first is permissible, while another may involve such a possible danger of monopoly on the one hand, and such·disaster from stoppage on the other, that both come within the public concern and power of regulation. If, as, in effect, contended by counsel for the state, the common callings are clothed with a public interest by a mere legislative declaration, which necessarily authorizes full.and comprehensive regulation within legislative discretion, there must be a revolution in the relation of government to general business. This will be running the public interest argument into the ground, to use a phrase of Mr. Justice Bradley when characterizing a similarly extreme contention. Civil Rights Cases, 109 U. S. 3, 24, 3 S. Ct. 18, 27 L. ed. 835, 843. It will be impossible to reconcile such result with the freedom of contract and of labor secured by the Fourteenth amendment."

Coming to the.barber business, it is quite apparent to everyone that insofar as sanitation is concerned it is subject to regulation. The public health manifestly requires it. Does any consideration of public interest, health, or welfare require or justify regulation of the hours during which barbershops may be open to the public? It would seem that the hours fixed by this ordinance would greatly inconvenience that part of the public which, due to its business hours, cannot patronize barbershops during the prescribed hours, but must perforce rely for service upon the neighborhood shops in residential districts.

One of appellant's principal contentions is that the restriction here under consideration is necessary to protect barbers and their

employes from long hours of labor. The complete answer to that is that most shops are now successfully operating under an eight-hour day for employes and that the master barbers are subject to the same hours. No limitation of business hours is required, nor does such limitation assist in enforcing short hours for employes. If hours of employment are now staggered over a 10½- or 11½-hour day, they may be as readily staggered over any other arrangement.

Closing shops at an early hour can in no way facilitate sanitary inspection. The shops may readily be inspected at any time and need not be closed for that purpose. Upon what ground then can we justify this interference with the freedom of the individual to operate his business in his own way and according to his own ideas of good business?

Eight times have such ordinances been before the courts of last resort in this country, and seven times have they been held invalid as unjustifiable attempts to exercise the police power. In Patton v. City of Bellingham, 179 Wash. 566, 573, 38 P. (2d) 364, 366, the supreme court of Washington said:

"While the interest of the public may be likened unto an irresistible force which compels where it requires, it nevertheless must, under constitutional provisions, both federal and state, respect the rights of the individual. While the latter may not occupy the fixity of an immovable object, they nevertheless have the protection and sanction of the fundamental law of the land, and they recede before no less a force than that of public necessity.

" 'To sustain the individual freedom of action contemplated by the Constitution is not to strike down the common good, but to exalt it; for surely the good of society as a whole cannot be better served than by the preservation against arbitrary restraint of the liberties of its constituent members.' Adkins v. Children's Hospital, 261 U. S. 525, 561, 43 S. Ct. 394, 402, 67 L. ed. 785, 24 A. L. R. 1238.

"The occupation of barbering is a lawful business, and, so far from being an obnoxious one, it is now considered well-nigh indispensable. * * * But, in our opinion, the avowed object of the

ordinance bears no real or substantial relation to the reasonable protection of the public. It belongs, rather, in the category of unreasonable restrictions upon the right of a citizen to engage in a useful and lawful calling and to acquire and possess property and to so use it as will not interfere with the rights of others. The ordinance seeks not merely to regulate a business, but to dictate its operation.

" 'The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with or abridgment of such right is an invasion thereof, and a restriction of the liberty of the citizen as guaranteed by the Constitution.' Yee Gee v. City and County of San Francisco (D. C.) 235 F. 757, 759."

The court then took up and disposed of the contentions that the ordinance was necessary to limit the hours of labor and to facilitate inspection. It arrived at the conclusion that it bore no reasonable relation either to purpose or to the public health or general welfare. Other cases holding such ordinances invalid are Chaires v. City of Atlanta, 164 Ga. 755, 139 S. E. 559, 55 A. L. R. 230; City of Alexandria v. Hall, 171 La. 595, 131 So. 722; Knight v. Johns, 161 Miss. 519, 137 So. 509; Ernesti v. City of Grand Island, 125 Neb. 688, 251 N. W. 899; State ex rel. Newman v. City of Laramie, 40 Wyo. 74, 275 P. 106; Ganley v. Claeys, 2 Cal. (2d) 266, 40 P. (2d) 817, 818. The only case to the contrary is Falco v. Atlantic City, 99 N. J. L. 19, 122 A. 610, where the restriction as to hours was sustained as in aid of inspection. We are not persuaded by its reasoning. As said in the California case:

"In the barbering business the regulation is accomplished by limiting the practitioners to those who understand and will comply with sanitary methods adopted and approved by the state. It is apparent that, if the latter course is successfully pursued, the barbering business is completely and thoroughly regulated. It is equally obvious that, if the respondent in this case is not one who understands and who will not conform to the sanitary methods adopted, compelling him to close his shop an hour earlier is not going to accomplish that purpose."

In the Wyoming opinion there is a very thorough discussion of the reasonableness of restriction as to barbershop hours, and it was there held that when an ordinance went beyond the requirements of sanitation in which obviously there was a public interest and entered the field of hours of business it became an arbitrary interference with a lawful, harmless, and useful business. It stood then upon the same footing as a restriction upon the hours of business of any commercial or mercantile house, citing Saville v. Corless, 46 Utah, 495, 151 P. 51, 52, L. R. A. 1916A, 651, Ann. Cas. 1918D, 198, and State v. Ray, 131 N. C. 814, 42 S. E. 960, 60 L. R. A. 634, 92 A. S. R. 795. In the North Carolina case the court said [131 N. C. 815]:

"It is not shown, nor is it suggested, that defendant's keeping his store open after 7:30 interfered with the *rights* of anyone else. It was said that the other merchants in Scotland Neck were willing to close their stores at 7:30, but the defendant was not; and the ordinance was passed to compel him to do so, for the reason that if he kept open the others would be compelled to do so, or to give the defendant the benefit of the trade of the town after that time. But did this give the commissioners the right to close the defendant's store?

"It would seem that no such legislative power exists under our form of government and our ideas of personal liberty, as to allow such to interfere with the rights of ownership and dominion over his own property, except such interference be exercised for the protection and benefit of the public."

In the Utah case it was said [46 Utah, 499]:

"One or a number of merchants may desire to close their stores at six o'clock. They may do that. But they, by legislation, cannot compel every other merchant to close at the same hour. They can run their own business, but not their neighbor's."

In Lawton v. Steele, 152 U. S. 133, 137, 14 S. Ct. 499, 501, 38 L. ed. 385, the Supreme Court said:

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public

generally, as distinguished from those of a particular class, require interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and are not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations."

Insofar as such ordinances may provide reasonable sanitary standards, regulation, and inspection, the public interest is involved and is vitally affected. There it stops, and private rights need yield no further. The public interest is not further involved. We hold that the ordinance before us, insofar as it fixes the hours when barbershops may be open for business, is invalid as in violation of the due process clauses of our own and the federal constitution. That feature of the ordinance bears no legitimate or reasonable relation to the public health or general welfare.

If to serve their own purpose those engaged in the barber business desire to effect what is sought to be effected by this ordinance, they will have to accomplish it by friendly arrangement within the membership of those engaged in the business and not by resort to compulsory legislation.

The relator will be forthwith released and discharged from custody.

DEVANEY, CHIEF JUSTICE (dissenting).

In my opinion the ordinance here in question is one which is designed solely to regulate hours of labor. As such, I believe its enactment constitutes a valid exercise of the police power. Ordinances prescribing hours of opening and closing secondhand shops, Hyman v. Boldrick, 153 Ky. 77, 154 S. W. 369, 44 L.R.A.(N.S.) 1039; pawnshops, City of Butte v. Paltrovich, 30 Mont. 18, 75 P. 521, 104 A. S. R. 698; and pool halls, billiard halls, and soft drink parlors, Churchill v. City of Albany, 65 Or. 442, 133 P. 632, Ann. Cas. 1915A, 1094, have been held constitutional. Such enactments, though not sustained as a means of regulating hours of labor, have been upheld as a valid exercise of the police power. In Barbier v. Connolly,

113 U. S. 27, 5 S. Ct. 357, 28 L. ed. 923, and Soon Hing v. Crowley, 113 U. S. 703, 5 S. Ct. 730, 734, 28 L. ed. 1145, the United States Supreme Court upheld ordinances prohibiting washing and ironing in public laundries from ten p. m. until six a. m. within certain territorial limits. This was held valid as a means of fire prevention. In the Soon Hing case it was said [113 U. S. 710]:

"So, too, with the hours of labor. On few subjects has there been more regulation. How many hours shall constitute a day's work in the absence of contract, at what time shops in our cities shall close at night, are constant subjects of legislation."

Through all these decisions runs the notion that it is largely in the discretion of the body which enacts the law (in this case the Minneapolis city council) whether a particular subject is a proper one for regulation and that such determination by that body should not be lightly interfered with.

Sunday closing laws have been almost universally upheld. In the Soon Hing case, Mr. Justice Field said [113 U. S. 710]:

"Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and workshops and in the heated rooms of our cities; and their validity has been sustained by the highest courts of the States."

See also State v. Petit, 74 Minn. 376, 379, 77 N. W. 225.

I am persuaded by the language of Mr. Justice Blake in the dissenting opinion of Patton v. City of Bellingham, 179 Wash. 566, 582, 38 P. (2d) 364, 370:

"Looking through the pretext and at the reality, the purpose of this ordinance is to curb competition of the chain store character in the barber trade. And it is every whit as justifiable as the laundry ordinance. The chain shops, by working two or three

shifts, can keep open twelve, sixteen or twenty-four hours. In order to live, the one or two chair shops must keep open for a like period. Thus, through economic necessity, men in the latter shops are forced to work for a length of hours that deprives them of the leisure that makes life worth living. The power of the government to enact legislation to alleviate such conditions is inherent. Such legislation is grounded in the government's 'right to protect all persons from the physical and moral debasement. which comes from uninterrupted labor.' "

