Irwin I. THOMPSON, Relator,

v.

COMMISSIONER of Health,
Respondent.

No. A09–1061.

Court of Appeals of Minnesota.

Feb. 23, 2010.

Jonathan Geffen, Arneson & Geffen PLLC, Minneapolis, MN, for relator.

Lori Swanson, Attorney General, Audrey Kaiser Manka, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by LARKIN, Presiding Judge; MINGE, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

Relator challenges his disqualification from any position allowing direct contact with, or access to, persons receiving services from facilities licensed by the Minnesota Department of Human Services and the Minnesota Department of Health, from facilities serving children or youth licensed by the Department of Corrections, and from unlicensed personal-care-provider organizations, arguing that his due-process rights were violated because he was denied a hearing after his disqualification. We agree and reverse and remand.

## FACTS

The Minnesota Department of Human Services (DHS), Division of Licensing, determined that relator Irwin I. Thompson, a social worker, was disqualified from any position allowing direct contact with, or access to, persons receiving services from facilities licensed by DHS and the Minnesota Department of Health (MDH), from facilities serving children or youth licensed by the Department of Corrections, and from unlicensed personal-care-provider organizations. Based on information received by DHS pursuant to a background-study request submitted by the University of Minnesota School of Social Work, DHS determined that "there is a preponderance of evidence that on September 5, 1995,

[relator] committed an act which meets the definition of a disqualifying characteristic (§ 152.023—felony third degree controlled substance crime)."

The evidence on which DHS based its disqualification determination included information from the Federal Bureau of Investigation (FBI), Hennepin County District Court, and the Minneapolis Police Department. The police records describe officers' observations of appellant on two occasions, and the court records show that relator was charged with the commission of one count of third-degree controlled substance crime (sale) on August 29, 1995, and one count of third-degree controlled substance crime (possession) on September 5, 1995. As to both counts, relator participated in court-ordered diversion and the charges were dismissed in 1998, after relator met the conditions of diversion. Relator neither pleaded guilty to, nor was convicted of, either count.

DHS advised relator that he could request reconsideration of his disqualification on two grounds: (1) the information used to disqualify relator was incorrect; and (2) in spite of his disqualification, relator would not harm the people receiving services where he worked. Relator sought reconsideration on both grounds. MDH set aside relator's disqualification from his position at the University of Minnesota School of Social Work but did not respond to his request for reconsideration of the underlying disqualification. Noting "that DHS relied solely on decade old police reports when it concluded [relator] committed a felony crime," relator sought "written verification that MDH reconsidered its finding pursuant to Minn.Stat. § 245C.21, that there exists a preponderance of evidence that [relator] committed a third degree felonious drug offense." Relator also sought clarification of MDH's position that he was not entitled to a hearing "on his continued objection to MDH's conclusion that he is disqualified based on the preponderance of evidence that he committed a crime." Relator asserted that MDH's failure to provide him a fair hearing violated his right to due process. MDH responded that "it is reasonable to believe that the appeals coordinator did consider correctness when making her decision to grant [relator] a set aside." MDH also informed relator that because MDH set aside his disqualification, "he is not entitled to a fair hearing to appeal the correctness of his disqualification."

This certiorari appeal follows.

## ISSUES

I. Did relator have a due-process right to a hearing to challenge his disqualification?

II. Was relator's right to equal protection violated?

## ANALYSIS

Relator argues that: (1) he had a property interest in employment and a liberty interest in protecting his good name and reputation, and therefore had a due-process right to a hearing; (2) the evidence was insufficient to support his disqualification; (3) the decision was arbitrary or capricious; (4) his case must be remanded for consideration of mitigating factors; and (5) his right to equal protection was violated. We conclude that relator had a due-process right to a hearing, and because we reverse and remand for further proceedings, we need not address relator's other arguments. But we do briefly address relator's equal-protection argument.

### I

"This court reviews de novo the procedural due process afforded a party." *Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216, 220 (Minn.App.

1999), *review denied* (Minn. July 28, 1999). Relator relies on due process as provided in the federal and state constitutions. "[T]he due process protections granted under the United States and Minnesota Constitutions are identical." *Fosselman v. Comm'r of Human Servs.*, 612 N.W.2d 456 (Minn.App.2000).

Under Minn.Stat. § 245C.14, the commissioner "shall disqualify" the subject of a background study from "any position allowing direct contact" with persons receiving services from a license-holder if "a preponderance of the evidence indicates the individual has committed an act or acts that meet the definition of any of the crimes listed in section 245C.15." Minn. Stat. § 254C.14, subd. 1(a)(2) (2008). Section 245C.15 includes felony-level crimes under chapter 152, which is the chapter that defines felony third-degree controlled-substance crime. Minn.Stat. § 245C.15, subd. 2(a)(2) (2008); Minn.Stat. § 152.023 (2008) (defining third-degree controlled-substance crime). When conducting a background study, "if the commissioner has reasonable cause to believe the information is pertinent to the disqualification of an individual," the commissioner may review "arrest and investigative information" from a variety of sources, including the Bureau of Criminal Apprehension, a county attorney, a county sheriff, a local chief of police, the courts, and the FBI.[1] Minn.Stat. § 245C.08, subd. 3 (2008).

Disqualifications for felony crimes under chapter 152 last for 15 years. Minn.Stat. § 245C.15, subd. 2(a) (2008). "When a disqualification is based on a preponderance of evidence of a disqualifying act," the disqualification begins "from the date of the dismissal, the date of discharge of the sentence imposed for a conviction for a disqualifying crime of similar elements, or the date of the incident, whichever occurs last." *Id.*, subd. 2(f) (2008).

"An individual who is the subject of a disqualification may request a reconsideration of the disqualification." Minn.Stat. § 245C.21, subd. 1 (2008). The disqualified individual must submit information showing that the information relied on by the commissioner was incorrect or that the individual does not pose a risk of harm to any person served by the applicant or license holder. *Id.*, subd. 3 (2008). Disqualification may be set aside "if the commissioner finds that the individual has submitted sufficient information to demonstrate that the individual does not pose a risk of harm" to any person served by the applicant or license holder. Minn.Stat. § 245C.22, subd. 4(a) (2008). The commissioner shall consider eight factors in reaching this decision and "any other information relevant to reconsideration."[2] *Id.*, subd. 4(b) (2008).

When disqualification is set aside under section 245C.22, "the disqualified individual remains disqualified, but may hold a license and have direct contact with or

---

1.  Relator argues that police reports were insufficient evidence to support his disqualification. Although we do not fully address relator's sufficiency-of-the-evidence argument, we note that section 245C.08, subdivision 3, allows the commissioner to consider police records.

2.  The factors are: (1) the nature, severity, and consequences of the event that led to disqualification; (2) whether there is more than one disqualifying event; (3) the age and vulnera-

bility of the victim at the time of the event; (4) the harm suffered by the victim; (5) the vulnerability of persons served by the program; (6) the similarity between the victim and persons served by the program; (7) the time elapsed without a repeat of the same or similar event; and (8) documentation of successful completion of training or rehabilitation pertinent to the event. Minn.Stat. § 245C.22, subd. 4(b).

access to persons receiving services." Minn.Stat. § 245C.22, subd. 5 (2008). But the set-aside is limited to the licensed program, applicant, or agency specified in the set-aside notice, unless otherwise specified in the notice. *Id.*

If a disqualified individual seeks reconsideration of a decision that a preponderance of the evidence shows that the individual committed a crime listed in section 245C.15, and if "the commissioner *does not* set aside a disqualification," then the individual may seek "a fair hearing under section 256.045." Minn.Stat. § 245C.27, subd. 1(a) (2008) (emphasis added). MDH concluded that, under section 245C.27, subdivision 1(a), relator had no right to a hearing because his disqualification was set aside. Respondent argues that relator had no right to a hearing under either section 245C.27 or another statutory section, section 256.045, subdivision 3(a)(10) (2008). Relator does not complain about the set-aside of his disqualification nor does he argue that he had a statutory right to a hearing. Instead, relator challenges the constitutionality of Minn.Stat. § 245C.27, subd. 1(a), as applied to him. Relator complains that MDH's failure to provide him a hearing to challenge the underlying disqualification, which remains in place, violated his right to due process. We therefore focus our analysis on section 245C.27, subdivision 1(a), on which MDH relied in denying relator a hearing, to determine whether, as applied, it is unconstitutional because it denied relator due process.

Two significant due-process cases bear on the decision in this case: *Sweet v. Commissioner of Human Services,* 702 N.W.2d 314 (Minn.App.2005), *review denied* (Minn.

Nov. 15, 2005); and *Fosselman,* 612 N.W.2d at 456. In both cases, this court considered claims of due-process violations relating to denials of evidentiary hearings to challenge DHS decisions. *Sweet,* 702 N.W.2d at 319; *Fosselman,* 612 N.W.2d at 461. Sweet wanted to work as a counselor in prison aftercare programs and was disqualified based on convictions for controlled-substance crime and criminal-sexual conduct. *Sweet,* 702 N.W.2d at 316. After Sweet's request for a set-aside was denied, he challenged Minn.Stat. § 245C.27, subd. 1(c) (2004), arguing that it denied him due process because, under the statute, he was not entitled to an evidentiary hearing on his request for a set-aside.[3] *Id.* at 319. *Fosselman* involved three relators who were disqualified for failure to report maltreatment of a child. 612 N.W.2d at 459. The relators argued that they should have been allowed a hearing because a statute allowed a fair hearing to those given a right of appeal "by other provisions of law," and the Due Process Clauses of the United States and Minnesota Constitutions were such "other provisions of law." *Id.* at 459–60.

In both *Sweet* and *Fosselman,* this court first determined that the relators had a property interest in their employment with facilities licensed by DHS. *Sweet,* 702 N.W.2d at 320; *Fosselman,* 612 N.W.2d at 461. In *Fosselman,* this court also noted that the relators had a liberty interest in protecting their good names and reputations and their freedom to pursue future employment opportunities. 612 N.W.2d at 461. The court in *Sweet* and *Fosselman* then applied the three-part balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976),

**3.** The statute was amended in 2005 to state that when a disqualification is based on a conviction or admission and is not set aside, the individual may obtain a hearing that is limited to the issue of whether the individual poses a risk of harm. Minn.Stat. § 245C.27, subd. 1(e) (2008); 2005 Minn. Laws 1st Spec. Sess. ch. 4, art. 1, § 41 at 2490.

to determine what process was due. *Sweet,* 702 N.W.2d at 320–22; *Fosselman,* 612 N.W.2d at 461–65; *see also State ex rel. Pavlik v. Johannes,* 194 Minn. 10, 19, 259 N.W. 537, 540–41 (1935) (addressing liberty and property interests in employment). In *Sweet,* this court concluded that due process did not require an evidentiary hearing and affirmed. 702 N.W.2d at 322. But in *Fosselman,* this court concluded that due process required an evidentiary hearing and reversed. 612 N.W.2d at 465.

■ Here, as in *Sweet* and *Fosselman,* relator has protected interests at stake-his property interest in his employment and his liberty interest in protecting his good name and reputation and his freedom to pursue future employment opportunities. Although relator is allowed to work at the University of Minnesota School of Social Work, his ability to work is restricted in significant ways because of the disqualification set-aside. Relator cannot work for anyone but his current employer without further authorization from DHS, and his current set-aside could be rescinded. *See* Minn.Stat. § 245C.22, subds. 5 (stating that set-aside "is limited solely to the licensed program, applicant, or agency specified in the set aside notice ... unless otherwise specified in the notice"), 6 (stating that set-aside may be rescinded based on new information) (2008). Further, relator's employer was notified of the reason for his disqualification, and, if relator succeeded in having the disqualification rescinded, his employer would be notified that the information relied on to disqualify relator was incorrect. *See* Minn.Stat. § 245C.23, subd. 1 (2008) (stating that if a disqualification is rescinded, the license holder will receive notice that the information relied on to disqualify the individual was incorrect). Because relator has protected liberty and property interests at stake, we will apply the three-part balanc-

ing test of *Mathews,* guided by application of the same test in the *Sweet* and *Fosselman* decisions.

### Application of Mathews Balancing Test

■ Under *Mathews,* courts balance: (1) the significance of the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest under current procedures, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens any additional requirements would entail. *Sweet,* 702 N.W.2d at 320.

#### Significance of Private Interest

In *Sweet,* this court stated that "[e]mployment in an individual's chosen field is significant and weighs heavily in the individual's favor." 702 N.W.2d at 320. This court noted that Sweet was not disqualified from working in *every* position in his profession, only in state-regulated facilities, but concluded that continued employment in the public sector was a significant interest that weighed in Sweet's favor. *Id.* In *Fosselman,* the court determined that the significance of the relators' private interests weighed heavily in their favor, noting that they were precluded from working in their chosen field for seven years and could re-enter that field only at the discretion of the commissioner. 612 N.W.2d at 462.

Here, relator's circumstances are different from the circumstances in *Sweet* and *Fosselman* because relator is not prevented from working in his field—he can continue working in his present position because of the set-aside. Respondent argues therefore that the first *Mathews* factor is neutral in this case. Relator argues that this factor weighs in his favor because the disqualification remains in place, his em-

ployment is restricted, and, if he seeks work elsewhere, he will be required to seek reconsideration again and the potential employer will be informed of the disqualifying characteristic. *See* Minn.Stat. § 245C.23, subd. 1 (stating that when an individual's disqualification is set aside, the license holder will receive notice of the disqualifying characteristic and the reasons the set-aside was granted). We agree with relator that this factor weighs in his favor, although we conclude that it does not weigh as strongly as it weighed in favor of the relators in *Sweet* and *Fosselman.*

*Risk of Erroneous Deprivation and Value of Additional Safeguards*

In *Sweet,* this factor did not weigh in the relator's favor. 702 N.W.2d at 321. This court concluded that an evidentiary hearing would not have been valuable, reasoning that Sweet had "the unfettered right to present all evidence ... in his written submission," that the agency was presenting no controverting testimony and a hearing was therefore not necessary for cross-examination of witnesses, and that Sweet would submit the same evidence whether the case were presented orally or in writing. *Id.*

By contrast, in *Fosselman,* this factor weighed heavily in relators' favor. 612 N.W.2d at 462. This court noted that the Supreme Court decided in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that welfare recipients should have the opportunity for an evidentiary hearing before termination of benefits, and this court noted that the Supreme Court emphasized the right to present evidence orally, confront witnesses, and cross-examine adverse witnesses. *Id.* (citing *Goldberg,* 397 U.S. at 268, 90 S.Ct. at 1021). In *Goldberg,* the Court said: "In almost every setting where important decisions turn on questions of fact, due process

requires an opportunity to confront and cross-examine adverse witnesses." *Id.* (quoting *Goldberg,* 397 U.S. at 269, 90 S.Ct. at 1021).

In *Fosselman,* this court stated that the disqualification proceedings at issue involved questions of "whether an individual was maltreated and whether [a] mandated reporter knew or had reason to know of the maltreatment" and could "well be as fact intensive as welfare termination proceedings and thus have the same need for the procedural safeguards noted in *Goldberg.*" *Id.* at 463. This court also emphasized that the relators were never able to challenge the maltreatment determination, which had been made in an appeal by a different individual. *Id.* This court stated that preventing an individual from "challenging an essential fact" could result in a denial of due process. *Id.*

In *Sweet,* this court distinguished *Fosselman* by stating that the issue in *Fosselman* was whether individuals had "actually committed the act that would subject them to disqualification," noting that the evidence had been disputed. *Sweet,* 702 N.W.2d at 320–21. Significantly, the issue in *Fosselman*—whether a preponderance of the evidence showed that relator had actually committed a disqualifying act—is also present here. Respondent argues that relator *could have* challenged the charges against him in his criminal proceeding rather than going through diversion and obtaining dismissal of the September 5, 1995 charge. Respondent emphasizes that in *Sweet,* 702 N.W.2d at 321, this court stated that Sweet had "been afforded the full panoply of rights in the criminal proceedings leading up to his convictions." This court recently applied this principle in a case dealing with disqualification after a conviction, stating that the criminal process both provided

due process and lessened the risk of an erroneous decision. *Obara v. Minn. Dep't of Health,* 758 N.W.2d 873, 879 (Minn.App.2008).

Here, relator has no conviction, so there is no prior adjudication upon which we can rely to lessen the risk of an erroneous determination. Relator's administrative proceeding was his first factual contest of the criminal allegations. In such circumstances, as in *Fosselman,* the concerns that led to the in-person hearing requirement in *Goldberg* are present. *Goldberg* stated that "[p]articularly where credibility and veracity are at issue ... written submissions are a wholly unsatisfactory basis for decision." 397 U.S. at 269, 90 S.Ct. at 1021. Here, relator had the burden at his administrative proceeding to submit information showing that information in police reports was inaccurate. Minn.Stat. § 245C.21, subd. 3(a) (stating that "[t]he disqualified individual requesting reconsideration must submit information showing that ... the information the commissioner relied upon in determining the underlying conduct that gave rise to the disqualification is incorrect"). Thus, credibility and veracity were very important. An evidentiary hearing would be highly valuable and written submissions were a "wholly unsatisfactory basis for decision." This factor therefore weighs in relator's favor.

*Administrative Burdens*

In *Sweet,* this factor weighed in the government's favor. 702 N.W.2d at 322. The governmental interest was "protecting the public, especially vulnerable individuals attending counseling for drug and alcohol addiction," and this interest was "of paramount importance." *Id.* at 321. The government also had an interest "in saving time and money by reconsidering disqualifications quickly and efficiently, without the additional time, expenses, and personnel required to provide evidentiary hearings to disqualified individuals." *Id.* In *Fosselman,* this factor also weighed in the government's favor, but not significantly. 612 N.W.2d at 465. This court concluded that the government's primary interest was in protecting individuals receiving services and that this interest would not be obstructed by providing a hearing. *Id.* at 464. This court noted that the government had an additional interest in avoiding the cost and administrative burden of providing a hearing, but that the burden was lessened because there were procedures in place for providing a hearing. *Id.* at 465. Here, as in both *Sweet* and *Fosselman,* this factor weighs in favor of respondent. But as in *Fosselman,* the weight of the factor is decreased by the existence of procedures that could be used to review relator's disqualification.

We conclude that the overall balance of the *Mathews* factors favors relator and that relator therefore had a due-process right to a hearing to challenge his underlying disqualification.

## II

■ Relator also argues that DHS violated his right to equal protection. "The guarantee of equal protection of the laws requires that the state treat all similarly situated persons alike." *Greene v. Comm'r of Minn. Dept. of Human Servs.,* 733 N.W.2d 490, 494 (Minn.App.2007) (quoting *State v. Behl,* 564 N.W.2d 560, 568 (Minn.1997)), *aff'd,* 755 N.W.2d 713 (Minn. 2008). "An essential element of an equal-protection claim is that the persons claiming disparate treatment must be similarly situated to those to whom they compare themselves." *Id.* "Similarly situated groups must be alike 'in all relevant respects.'" *St. Cloud Police Relief Ass'n v. City of St. Cloud,* 555 N.W.2d 318, 320 (Minn.App.1996) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331,

120 L.Ed.2d 1 (1992)), *review denied* (Minn. Jan. 7, 1997).

■ We note that some of the disqualification statutes may treat similarly situated persons differently. Subdivision 2(e) of section 245C.15 allows for a shorter disqualification period when an individual commits a felony-level violation of an offense listed in subdivision 2(a), "but the sentence or level of the offense is a gross misdemeanor or misdemeanor." We are concerned that subdivision 2(e) may allow a person, who pleads guilty or is found guilty of a felony-level offense listed in subdivision 2(a), but who receives a gross-misdemeanor or misdemeanor sentence, to be treated more favorably than a person, such as relator, whose criminal charge was dismissed. But, despite this concern, we conclude that relator's equal-protection argument fails because he has not presented sufficient legal argument or authority in support of his claim. *See State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480–81 (Minn.1997) (declining to reach issues in absence of adequate briefing). In one part of his argument, relator challenges the treatment of individuals by a "statute," which he does not identify, and in another part he asserts that MDH is treating individuals differently. Relator does not offer any evidence of MDH actually treating individuals differently and, instead, asks questions about what MDH is doing and then asks for a remand to address the questions.

■ An individual challenging the constitutionality of a statute on equal-protection grounds has the burden to demonstrate its unconstitutionality beyond a reasonable doubt. *Murphy v. Comm'r of Human Servs.,* 765 N.W.2d 100, 104 (Minn.App.2009). By failing even to identify the statute at issue, relator has failed to show that any statute treats similarly situated individuals differently. By failing to offer legal argument or analysis, relator has not met his burden and his argument fails.

## DECISION

We conclude that relator had a due-process right to a hearing to challenge his disqualification, which was based on a preponderance-of-the-evidence determination that he committed a disqualifying act under Minn.Stat. § 245C.14, subd. 1(a)(2). Relator had significant property and liberty interests at stake, and his disqualification was based on a fact-intensive inquiry in which credibility and veracity were important. We therefore reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**