## ·BARBIER *v.* CONNOLLY.

IN ERROR TO THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, STATE OF CALIFORNIA.

Submitted November 25, 1884.—Decided January 5, 1885.

A municipal ordinance prohibiting from washing and ironing in public laun-
dries and wash-houses within defined territorial limits, from ten o'clock at
night to six in the morning, is a purely police regulation, within the com-
petency of a municipality possessed of the ordinary powers.

The Fourteenth Amendment of the Constitution does not impair the police
power of a State.

In error to a State court, this court cannot pass upon the question of the con-
formity of a municipal ordinance with the requirements of the Constitution
of the State.

On the 8th of April, 1884, the Board of Supervisors of the
city and county of San Francisco, the legislative authority of
that municipality, passed an ordinance reciting that the indis-
criminate establishment of public laundries and wash-houses,
where clothes and other articles were cleansed for hire, en-
dangered the public health and the public safety, prejudiced
the well-being and comfort of the community, and depreciated
the value of property in their neighborhood; and then ordain-
ing, pursuant to authority alleged to be vested in the Board
under provisions of the State Constitution, and of the act of
April 19, 1856, consolidating the government of the city and
county, that after its passage it should be unlawful for any
person to establish, maintain or carry on the business of a pub-
lic laundry or of a public wash-house within certain designated
limits of the city and county, without first having obtained a
certificate, signed by the health officer of the municipality, that
the premises were properly and sufficiently drained, and that
all proper arrangements were made to carry on the business
without injury to the sanitary condition of the neighborhood;
also a certificate signed by the Board of Fire Wardens of the
municipality, that the stoves, washing and drying apparatus,
and the appliances for heating smoothing-irons, were in good
condition, and that their use was not dangerous to the sur-

rounding property from fire, and that all proper precautions were taken to comply with the provisions of the ordinance defining the fire limits of the city and county, and making regulations concerning the erection and use of buildings therein.

The ordinance required the health officer and Board of Fire Wardens, upon application of any one to open or conduct the business of a public laundry, to inspect the premises in which it was proposed to carry on the business, in order to ascertain whether they are provided with proper drainage and sanitary appliances, and whether the provisions of the fire ordinance have been complied with; and, if found satisfactory in all respects, to issue to the applicant the required certificates without charge for the services rendered. Its fourth section declared that no person owning or employed in a public laundry or a public wash-house within the prescribed limits shall wash or iron clothes between the hours of ten in the evening and six in the morning or upon any portion of Sunday; and its fifth section, that no person engaged in the laundry business within those limits should permit any one suffering from an infectious or contagious disease to lodge, sleep, or remain upon the premises. The violation of any of these several provisions was declared to be a misdemeanor, and penalties were prescribed differing in degree according to the nature of the offence. The establishing, maintaining, or carrying on the business, without obtaining the certificates, was punishable by fine of not more than $1,000, or by imprisonment of not more than six months, or by both. Carrying on the business outside of the hours prescribed, or permitting persons with contagious diseases on the premises, was punishable by fine of not less than $5 or more than $50, or by imprisonment of not more than one month, or by both such fine and imprisonment.

The petitioner in the court below, the plaintiff in error here, was convicted in the Police Judge's Court of the City and County of San Francisco, under the fourth section of the ordinance, of washing and ironing clothes in a public laundry, within the prescribed limits, between the hours of ten o'clock in the evening of May 1, 1884, and six o'clock in the morning of the following day, and was sentenced to imprisonment in

the county jail for five days, and was accordingly committed, in execution of the sentence, to the custody of the sheriff of the city and county, who was keeper of the county jail. That court had jurisdiction to try him for the alleged offence, if the ordinance was valid and binding. But, alleging that his arrest and imprisonment were illegal, he obtained from the Superior Court of the city and county a writ of *habeas corpus,* in obedience to which his body was brought before the court by the sheriff, who returned that he was held under the commitment of the police judge upon a conviction of a misdemeanor, the commitment and sentence being produced.

The petitioner thereupon moved for his discharge on the ground that the fourth section of the ordinance violates the Fourteenth Amendment to the Constitution of the United States, and certain sections of the Constitution of the State. The particulars stated in which such alleged violations consist were substantially these—omitting the repetition of the same position—that the section discriminated between the class of laborers engaged in the laundry business and those engaged in other kinds of business; that it discriminated between laborers beyond the designated limits and those within them; that it deprived the petitioner of the right to labor, and, as a necessary consequence, of the right to acquire property; that it was not within the power of the Board of Supervisors of the city and county of San Francisco; and that it was unreasonable in its requirements. The Superior Court overruled the positions and dismissed the writ, and the petitioner brought this writ of error.

*Mr. A. C. Searle, Mr. H. G. Sieberst* and *Mr. Alfred Clarke* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court. He recited the facts as above stated, and continued:

In this case we can only consider whether the fourth section of the ordinance of the city and county of San Francisco is in con-

flict with the Constitution or laws of the United States. We cannot pass upon the conformity of that section with the requirements of the Constitution of the State. Our jurisdiction is confined to a consideration of the federal question involved, which arises upon an alleged conflict of the fourth section in question with the first section of the Fourteenth Amendment of the Constitution of the United States. No other part of the amendment has any possible application.

That fourth section, so far as it is involved in the case before the police judge, was simply a prohibition to carry on the washing and ironing of clothes in public laundries and washhouses, within certain prescribed limits of the city and county, from ten o'clock at night until six o'clock on the morning of the following day. The prohibition against labor on Sunday is not involved. The provision is purely a police regulation within the competency of any municipality possessed of the ordinary powers belonging to such bodies. And it would be an extraordinary usurpation of the authority of a municipality, if a federal tribunal should undertake to supervise such regulations. It may be a necessary measure of precaution in a city composed largely of wooden buildings like San Francisco, that occupations, in which fires are constantly required, should cease after certain hours at night until the following morning; and of the necessity of such regulations the municipal bodies are the exclusive judges; at least any correction of their action in such matters can come only from State legislation or State tribunals. The same municipal authority which directs the cessation of labor must necessarily prescribe the limits within which it shall be enforced, as it does the limits in a city within which wooden buildings cannot be constructed. There is no invidious discrimination against any one within the prescribed limits by such regulations. There is none in the regulation under consideration. The specification of the limits within which the business cannot be carried on without the certificates of the health officer and Board of Fire Wardens is merely a designation of the portion of the city in which the precautionary measures against fire and to secure proper drainage must be taken for the public health and safety. It is not legislation

discriminating against any one. All persons engaged in the same business within it are treated alike; are subject to the same restrictions and are entitled to the same privileges under similar conditions.

The Fourteenth Amendment, in declaring that no State "shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offences. But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits—for supplying water, preventing fires, lighting districts, cleaning streets, opening parks, and many other objects. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed,

not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.

In the execution of admitted powers unnecessary proceedings are often required which are cumbersome, dilatory and expensive, yet, if no discrimination against any one be made and no substantial right be impaired by them, they are not obnoxious to any constitutional objection. The inconveniences arising in the administration of the laws from this cause are matters entirely for the consideration of the State; they can be remedied only by the State. In the case before us the provisions requiring certificates from the health officer and the Board of Fire Wardens may, in some instances, be unnecessary, and the changes to be made to meet the conditions prescribed may be burdensome, but, as we have said, this is a matter for the determination of the municipality in the execution of its police powers, and not a violation of any substantial right of the individual.

*Judgment affirmed.*