## Commonwealth v. A Ford Coupe.

*Prohibition enforcement—Condemnation of automobile seized in transporting liquor — Bond given by owner — Collection — Constitutional law—Equal protection—Classification—Act of March 27, 1923.*

1. Section 11 of the Act of March 27, 1923, P. L. 34, relating to prohibition enforcement, divides owners of certain kinds of property into two classes, those having knowledge of the illegal use of their property and those who do not have such knowledge. The latter class are then divided into two groups, those who have placed their property in the hands of others through lease or contract and those who have not parted with possession. The act permits a member of the latter group to recover his property on proof of his ownership and ignorance of the unlawful use of his property, while no such privilege is extended to members of the first group of the second class.

2. The purpose of the act is to enforce the amendment to the Federal Constitution prohibiting the use of intoxicating liquor for beverage purposes and the relation of the classification to the act is readily seen. The classification is reasonable. The act, therefore, does not grant an exclusive privilege or immunity to one of a number standing in like circumstances. It does not deny the equal protection of the laws, and it is constitutional.

3. Where an owner of an automobile who had parted with possession of the same before it was seized in transporting intoxicating liquor has given a bond and obtained possession of the automobile, the bond will be forfeited to the Commonwealth upon condemnation of the automobile, and, upon such forfeiture, proceedings for collection of the penal sum mentioned in the bond may be commenced unless its terms are complied with.

Petition for condemnation of an automobile seized in unlawful transportation of intoxicating liquor. Q. S. Dauphin Co., June Sess., 1924, No. 347.

*Robert T. Fox*, District Attorney, and *E. Le Roy Keen*, Assistant District Attorney, for petition.

*A. Ross Walter*, contra.

Fox, J., Jan. 27, 1925.—This matter comes before us upon a petition by John H. Yountz, County Detective, and an answer thereto by Edson & Company, a corporation of the State of Delaware, duly licensed in, and doing business under and by virtue of the laws of, this Commonwealth.

The petition in substance represents: That on July 9, 1924, J. M. Matkovic was, in the Borough of Steelton, apprehended by the acting chief of police of the said borough transporting a quantity of intoxicating liquor in a Ford coupé bearing Pennsylvania license No. 935878; that the said Matkovic was placed under arrest and that the said Ford coupé owned by the above mentioned Matkovic was taken by the policeman and placed in the possession of the petitioner. The prayer of the petition is that this court adjudge the aforementioned Ford coupé to be forfeited to the Commonwealth and condemned and to be sold according to law by the Sheriff of Dauphin County.

The answer in substance admits that the offence as alleged in the petition was committed by the said Matkovic, but avers that the said Matkovic, at the time of his arrest and the seizure of the Ford coupé, was not the owner thereof, but that it was owned by Edson & Company, they having obtained title to the same on Dec. 21, 1923, from the Williams Motor Company, which company had leased it by written lease to the said Matkovic, and on Dec. 21, 1923, sold the said coupé, subject to the lease to the said Edson & Company; that the latter had no knowledge whatsoever that the Ford coupé was being, nor intended to be, used for the unlawful transportation of intoxicating liquors; that after the coupé had thus been seized, Edson & Company filed according to law, in the office of the Clerk of Quarter Sessions of Dauphin

County, its approved bond and obtained possession of the coupé, and prays that the court make an order forthwith restoring the said coupé to it.

A hearing was held and testimony on the part of the owner taken, which discloses, and which we find to be the facts, that Edson & Company were the owners of the said coupé, subject to the said lease to Matkovic, and that they lawfully acquired the same and had no knowledge whatsoever that the bailee or lessee was using, or intended to use, the coupé for the unlawful purpose of transporting intoxicating liquor.

The county detective acted under the Act of March 27, 1923, § 11, P. L. 34, which relates to "Certain seized property declared contraband and forfeited—Provisions for disposal or sale of same."

The section divides owners of wagons, buggies, teams, motor-vehicles, etc., into classes; first, those who had knowledge of the use to which their property was being put or intended to be put, to wit: the illegal transportation of intoxicating liquors and, second, those owners who had no knowledge of such use. The owners in the first class sustain a complete loss of the property seized and declared contraband and forfeited; the owners in the second class do not sustain such loss. A division of the second class whose property is taken as contraband for the commission of the offence is then made between owners who have parted with the possession of their property under a bailment lease or contract and those whose property is not held and possessed under a bailment lease or contract.

The contention of the owners in this case is that said section 11 *(B)* III grants an exclusive privilege or immunity to a part of the second class, and, therefore, offends against article III, section 7, of the Constitution of Pennsylvania, which reads as follows: "The general assembly shall not pass any local or special law granting to any corporation, association or individual any exclusive privilege or immunity."

And that it does not afford equal protection to all of this class, and, therefore, offends against the 14th Amendment of the Constitution of the United States, which reads: "No state shall deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

This contention raises a question of constitutional law that does not seem to have been determined by the courts of this State in a case of similar nature. We find no cases and have been referred to none in which the courts have passed upon the question here raised.

This act of assembly is one that is within the police powers of the State.

Section 11 of the act referred to, as we said above, divides owners of certain kinds of property into two classes; first, those who have knowledge of the illegal use made of their property; and, second, those who do not have such knowledge. It then divides the latter class into two groups, viz., those owners who have placed their property in the hands of others through bailment lease or contract, and, second, those who have not parted with the possession of their property in any way. A member of the first group of the second class, whose property is taken as contraband after a hearing and upon proper finding and order of the court, after notice, must submit to a public sale of his property by the sheriff, the proceeds of which sale shall be paid to the county treasurer for the use of the county, and out of which proceeds, afer deduction of costs, he may claim such sum of money as may be due him upon the bailment lease or contract. A member of the other group need not submit to such sale, but upon petition to the court, upon hearing and upon proof satisfactory to the court of his ownership and ignorance of the

unlawful use of his property by another, shall have his property returned to him.

Webster defines an owner to be: "One who owns; a rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not."

There is here a discrimination between members of the class of owners who had no knowledge of the illegal use of their property which is taken as contraband. There are two groups of this class; one of which is those who have parted with the immediate possession of their property, and the other is those who have not so done. To the latter group is granted immunity from sale and the privilege of having their property returned; to the other is denied this immunity and this privilege. Burdens are cast upon the first group which are not to be borne by the second, yet both are ignorant of the offence committed by others. It is contended by the owner in this case that this is an arbitrary denial of an immunity and exclusive privilege to one group of persons and an arbitrary bestowal of an immunity and an exclusive privilege upon and to another group of owners, and that the former group does not receive equal protection with the latter, between which groups there is no substantial difference in standing, both groups being under the general class of owners, and for the purposes of the act are equal in law, and that, under our law, there can be no discrimination between them in liability.

The test as to whether this is a proper and lawful discrimination is: Is there a reasonable and just relation in the discrimination to the purposes intended by the act?

If there is such relationship, then the discrimination would be lawful. If there is not, there would be no substantial reason for it, and it would be an unfair and invalid discrimination between members of this class of owners.

No special privilege or immunity may be granted to one and denied to another of the same class under like circumstances, and equal protection must be given to all under our State and Federal Constitutions, and it is the duty of the courts to enforce this.

The public welfare must also be maintained, and when it is threatened by dangers arising, under our police power, these dangers may be suppressed by our legislative bodies, so long as they, in the legislation enacted, do not violate the supreme law of the land.

In the case of Truax v. Corrigan, 257 U. S. 312, Mr. Chief Justice Taft, in part, says: "Classification must be reasonable. . . . Must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without such basis. . . . The rule (of the equality clause) prescribes that that law have the attribute of equality of operation, and equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relations. . . . While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction bearing a reasonable and just relation to the things in respect to which such classification is imposed, and classification cannot be arbitrarily made without any substantial basis." See, also, Barbier v. Connolly, 113 U. S. 27; Connolly v. Union Sewer Pipe Co., 184 U. S. 540.

These cases and many others similar which might be cited have like application to both objections raised.

The purpose of the act, so far as it pertains to this case, is to prevent the unlawful transportation of intoxicating liquors. Will this purpose be better effectuated by the discrimination between an owner ignorant of the use to

which his property is being put by another, but who has parted with its immediate possession by bailment lease or contract, and the owner of property also ignorant of the use to which it is being put by another, but who has not parted with the immediate possession of it?

There is a difference between these two groups. In the first, the owner has voluntarily parted with the immediate possession of his property; he has placed its control and use in a third person, and so places himself that he may not know to what use it is being applied and has substituted for himself another to know whether or not his property is being unlawfully used; while in the second the owner retains possession, controls its use and knows how it is being applied, unless wrongfully deprived of that possession. They are owners under different conditions and under different circumstances. It is common knowledge, and we must take notice of the same, that myriads of motor-vehicles are disposed of by the owners upon bailment leases or other contracts, upon the payment by the lessee of a small sum of money proportionate to the selling price and a promise of further payments in the future; the lessee is given possession and control of the vehicle. This easy method of obtaining the possession of the property has assisted the "bootlegger" in plying his illicit trade. The transaction, so far as the owner or lessor is concerned, may be, and we believe in most cases is, entirely honest and without intention to assist in violating the law, yet the method is such that he who wishes to violate this law may without much difficulty find in it a speedy way of so doing. The legislature probably had this in mind when the law was enacted and regarded that a way to prevent the illegal transportation of intoxicating liquor was to keep from the violator, as far as possible, the vehicle of transportation, and that this could be best done by denying to the owner who transfers the possession of his property on bailment lease or contract to another the immunity, privilege and protection given to the owner who does not so part with the possession of his property, but retains it and knows the use being made of it. When a violation of this law is committed, it is known, and if the owner is convicted of the *scienter*, his property is forfeited. Why should not some penalty be inflicted upon the owner when he has substituted another to know and the latter violates the law or consents to a violation? The owner has made it possible for the violator to accomplish his purpose, and it is the ready access of the violator to the means of the violation that the legislature endeavored to prevent. Thereby is the intention of the act to prevent the unlawful transportation of intoxicating liquor more readily accomplished.

Furthermore, what hardship does the bailor or lessor sustain? Under his contract, he probably is entitled to the payment of a balance remaining unpaid; for this he has his remedy against the bailee or lessee. Besides, under this act, after due public notice and with notice to the owner, the vehicle is exposed to public sale. The owner has the opportunity of protecting his interest. If the property sells for an amount equal to his claim and the costs, he receives his money and suffers no loss. If it does not sell for such sum, he may purchase it and is out of pocket nothing but the costs. He never loses his remedy against his bailee or lessee for whatever loss he sustains in the matter, caused by reason of the former's transgressions of the law.

Bearing in mind that the purpose of the act is to enforce the amendment to the Federal Constitution prohibiting the use of intoxicating liquor for beverage purposes, the relation of the classification to the act is readily seen. In the one class the owner has wilfully parted with his possession and a part of his title; the lessee, the offender, holds this part of the title. True it may be

Commonwealth v. A Ford Coupe.

a lease in the fullest sense, but even then the right of the lessee in the automobile for a fixed period of time is presumed to have some monetary value. Or it may be that the lessee's title is under the commonly known bailment lease with an option of purchase when the instalments in reality make up the purchase price. The worth of the lessee's title then depends upon the payments made and the condition of the lessee's article. But in both cases some title is in the offender, and it is this title only which the State absolutely forfeits as a penalty. The title of the innocent bailor or lessor is taken from him, but after a public sale he receives the proceeds of such sale to the extent of his title or claim.

In the other class of cases the owner has not willingly given up his possession and has not parted with any of his title; the offender has no semblance of title to the automobile.

We think the classification of these two groups is a reasonable one. It rests upon a difference which bears a reasonable and just relation to the purpose of the act. The act does not grant an exclusive privilege or immunity to one of a number standing in like circumstances. It does not deny the equal protection of the laws. The constitutionality of the act must be sustained.

Wherefore, we are of the opinion that the prayer of the petitioner in substance should be granted. The owner having given an approved bond and having taken possession of the property as is provided for in the act, the sale of the Ford coupé is dispensed with and proceedings in lieu thereof may be had upon the bond.

And now, it is hereby ordered, adjudged and decreed that the Ford coupé mentioned in this case is forfeited to the Commonwealth and that the same is hereby condemned, and that the bond given to the Commonwealth by the owner in this case is now due, and unless its terms and conditions be forthwith complied with, proceedings may be commenced by the proper party thereon for the collection of the penal sum mentioned therein.

From Sidney E. Friedman, Harrisburg, Pa.