## Commonwealth v. Madison

*Ira B. La Bar*, district attorney, for Commonwealth.

*F. L. Mervine*, for defendant.

SHULL, P. J., August 29, 1931.—This prosecution is brought under sections 502 and 706 of the Act of Assembly of May 24, 1923, P. L. 359.

Section 502 is descriptive of deer which may legally be killed in the open season and only to that extent is material to this prosecution.

The question involved here arises under section 706, which provides as follows:

"Possession of Deer or Elk Without Head Attached.—The possession or control of a deer or elk or of any portion of either of such animals, shall be prima facie evidence that such animal was killed unlawfully in this Commonwealth, unless the head bearing antlers as hereinbefore provided is attached in a natural way. Each person in whose possession or under whose control the same may be found, or who may be proven to have had such animal, or part thereof, in possession or under control, shall be liable to the penalty provided in this article for the unlawful killing of elk or deer, as the case may be, unless such person shall immediately, upon demand made by an officer of the Commonwealth whose duty it is to protect game, produce the head bearing such antlers, or shall swear that the flesh in question, found in his possession or proven to have been under his control, is a part of a deer or elk legally killed in the Commonwealth, both or either, as in the mind of the officer investigating may be considered necessary."

The evidence discloses that William H. Merring, the game protector, demanded of the defendant, Irving J. Madison, the production of the head bearing antlers, etc. Madison failed to produce the same at the time of the demand, stating that he could not produce the same at the time of the demand as he had given it to Mrs. Blazier, who lived some distance from the residence of Madison, where the demand was made, and that he knew Mrs. Blazier was not at home. It does not appear that the game protector demanded that Madison make affidavit that the flesh in question was part of a deer legally killed in this Commonwealth.

Under the facts, if section 706 is constitutional, then defendant is guilty of violating that section of the act and is subject to the penalty imposed by the justice of the peace.

Section 706 is of a type of legislation which has had considerable growth in the past score of years and is of a type which, to the mind of the court, is a menace rather than a support or help in maintaining a peaceable and orderly community or to good government.

To the mind of the court, summary convictions should be resorted to only either in trivial offenses involving small penalties which would not be a menace to the liberty of citizens in poor circumstances or where the delay necessarily incident to a trial by jury might be a menace to the good order of the community as in cases of disorderly conduct, etc.

And, again, section 706 provides that "the possession or control of a deer or elk, or of any portion of either of such animals, shall be prima facie evidence that such animal was killed unlawfully in this Commonwealth, unless the head bearing antlers as hereinbefore provided is attached in a natural way."

This provision shifts the burden of proof from the Commonwealth to the defendant, which is, in the face of the fundamental principle of our criminal law, which provides that every one is presumed to be innocent and law-abiding until the Commonwealth proves otherwise; and though a murderer or a highwayman or a burglar is, in the eyes of the law, innocent until he is proven guilty before a jury of his peers, under this act, the law-abiding citizen who may have been the recipient of a venison steak or roast and has it in his refrigerator at home, awaiting mealtime, when it is to be cooked that he may enjoy it, is, in the eyes of the law, a criminal. These things a legislature in its "wisdom" may do, but this particular act in its viciousness does not stop there. It further provides that unless the person in whose possession any portion of the flesh of a deer may be found shall immediately, upon demand of a game protector, produce the head bearing antlers of such deer or swear that the flesh in question is from a legally killed deer, both or either, as in the mind of the officer investigating may be considered necessary, such person shall be subject to the penalty imposed for unlawfully killing deer. While it is perfectly lawful for one to accept a gift of a piece of venison, it is perfectly manifest that one who may receive as a gift a steak or a roast of venison can neither produce the head of the deer nor, if he is honest and conscientious, can he swear that the deer from which the flesh came was lawfully killed. And thus, at the caprice of a game protector, one who has done that which the law permits becomes a criminal and subject to penalty or loss of his liberty. While perhaps the legislature may do so, it clearly was not of legislative intent to make unlawful the possession by anyone of the flesh of a lawfully killed deer. This is perfectly manifest from the other sections of the act, of which section 706 is a part.

The common practice in hunting deer is that it is done in parties or

"camps," consisting of a number of individuals. This practice is so usual and common and in fact, if deer are to be successfully hunted, necessary, that the legislature recognized it and regulated hunting parties in section 707 of this same act. Under the general law, an individual may legally kill one deer of the type specified by law, but this is not true if and when the individual joins a hunting party, for section 502 limits the number of deer to be killed by one party, and if the party be more than six, which is usually the case, then the individual gives up his right to kill a deer after the party has killed the legal limit of six, and this the legislature may do, and it is perhaps a wise provision, but it necessarily contemplates a division of the meat of the deer killed by the hunting party among the members of that party. It has long been the custom or law of the woods that on a division among the party of the venison, the party actually killing the deer is entitled to the head and hide; the other members of the party to shares of the meat. It is perfectly manifest that but one of them could have the head to produce if a game protector demanded its production. As to the others, though they would have their share of the venison, unless they were actually present when the shot which killed the deer was fired, they could not conscientiously swear that the flesh was that of a lawfully killed deer. Though *"lex non cogit ad impossibilia,"* which maxim is true today as the day it was written, if this act of assembly is operative, it brings about an impossible condition, and perhaps these things the legislature in its "wisdom" may do, but when it comes to delegating its authority and to changing a government of laws into a government by the mere caprice of men, fortunately for American liberty, the Constitution stands in the way.

The real offense of this section is that it delegates power to a game protector which, if exercised at all, should have been exercised in definite form by the legislature, for, as we have said, a government is presumably a government of laws and not a government of men. The very idea that one man may be compelled to hold his liberty or any material right either essential or incidental to the enjoyment of life and liberty at the mere will or caprice of another is intolerable in any country where freedom prevails, for indeed it is of the very essence of slavery itself, and section 706 of this act vests in the game protector discretion without prescribing a uniform rule of action. It gives to him an arbitrary and uncontrolled power without reference to all of the class to which this statute was intended to apply and without being controlled or guided by any definite rule or specified condition to which all similarly situate may knowingly conform. Even though a law seem fair upon its face and impartial in its principles, yet, if it be open to administration by an individual with an evil eye and an unequal hand so as to make illegal discrimination between persons in similar circumstances, material to their rights, the denial of equal justice is still within constitutional prohibition: Yick Wo *v.* Hopkins, 118 U. S. 356.

Section 706 offends against article two, section one, of the Constitution, and is, therefore, unconstitutional and void; and, further, in violation of the Fourteenth Amendment of the Constitution of the United States, which guarantees equal protection of the laws. Equal protection of the laws is secured if the laws operate on all alike and do not subject the individual to an arbitrary exercise of the powers of government: Barbier *v.* Connolly, 113 U. S. 27; Duncan *v.* Missouri, 152 U. S. 377; Atchison, etc., R. Co. *v.* Matthews, 174 U. S. 96; McPherson *v.* Blacker, 146 U. S. 1, 39.

And now, August 29, 1931, the defendant in this case is found not guilty.

From C. C. Shull, Stroudsburg, Pa.