[Crim. No. 3973. In Bank.—June 18, 1936.]

In the Matter of the Application of BYRON MARK for a Writ of Habeas Corpus.

John L. McNab and Leo A. Sullivan for Petitioner.

F. Bert Fernhoff, City Attorney of Oakland, and John W. Collier, Assistant City Attorney, for Respondent.

THE COURT.—The petitioner was convicted in the Police Court of the City of Oakland of a violation of section 5–8.22 of an ordinance regulating the operation of laundries in that city. The writ of *habeas corpus* issued for the purpose of considering the question of the operative effect of that section of the ordinance.

The ordinance as a whole is comprehensive in its scope and embraces regulations dealing with the housing, operation, sanitation, etc., of laundries conducted within the confines of the city. Section 5–8.22, pertaining to "Hours", provides that it shall be unlawful to carry on laundering operations, to keep any such establishment open, or to solicit, pick up or deliver laundry on Sundays and specified holidays and on any other day between the hours of six o'clock P. M. and seven o'clock A. M. The petitioner was convicted of operating his laundry on a week-day after six o'clock P. M. The question is whether the enactment of said section is a reasonable exercise of the police power of the municipality.

The petitioner presents two main objections to the regulation: First, that the hours when closing the establishment is enjoined and the soliciting, picking up and delivery of laundry is prohibited have no relation to the general health or safety of the community, and that the regulation is therefore an unreasonable deprivation of the rights of the peti-

tioner; and, second, that the selection of laundries as the object of the closing regulations from numerous other lawful pursuits not less noxious is a classification which is discriminatory and invalid. The facts do not involve the Sunday or holiday closing regulation. The propriety of classification of laundries for many purposes of regulation may be assumed. It may also be assumed for the purposes of this proceeding that the classification of laundries, within specified districts, for the purpose of regulation of hours of operation, may be proper. It is then to be determined whether the prohibition as to remaining open, operating, soliciting, picking up and delivery of laundry between the hours of six P. M. and seven A. M., applicable to all laundries within the city, has such reasonable relation to the general health and safety of the community as to justify it as a valid exercise of the police power.

In support of the return to the writ it is contended that similar regulations have been upheld, and reliance is placed upon the cases of *Barbier* v. *Connolly*, (1885) 113 U. S. 27 [5 Sup. Ct. 357, 28 L. Ed. 923], *Soon Hing* v. *Crowley*, 113 U. S. 703 [5 Sup. Ct. 730, 28 L. Ed. 1145], *Ex parte Moynier*, 65 Cal. 33 [2 Pac. 728], and *In re Wong Wing*, 167 Cal. 109 [138 Pac. 695, 51 L. R. A. (N. S.) 361].

In *Barbier* v. *Connolly, supra,* the prohibition extended only to laundries within a certain prescribed district in the city of San Francisco, and limited the closing regulation to the hours between ten P. M. and six A. M., and the prohibition to the washing and ironing of clothes during those hours. The court in that case, through Mr. Justice Field, said: "The provision is purely a police regulation within the competency of any municipality possessed of the ordinary powers belonging to such bodies. And it would be an extraordinary usurpation of the authority of a municipality, if a federal tribunal should undertake to supervise such regulations. It may be a necessary measure of precaution in a city composed largely of wooden buildings like San Francisco, that occupations in which fires are constantly required, should cease after certain hours at night until the following morning; and of the necessity of such regulations the municipal bodies are the exclusive judges; at least any correction of their action in such matters can come only from state legislation or state tribunals." In *Soon*

*Hing* v. *Crowley, supra,* the same Justice, in considering the validity of a similar ordinance prescribing similar prohibitions involving laundries in San Francisco, followed the earlier pronouncement made in *Barbier* v. *Connolly, supra.* In the Soon Hing case Mr. Justice Field, after repeating in substance the foregoing quoted language, stated: "And it is of the utmost consequence in a city subject as San Francisco is, the greater part of the year, to high winds, and composed principally within the limits designated of wooden buildings, that regulations of a strict character should be adopted to prevent the possibility of fires. That occupations in which continuous fires are necessary should cease at certain hours of the night would seem to be, under such circumstances, a reasonable regulation as a measure of precaution."

A similar regulation adopted by the board of supervisors of San Francisco nearly a year prior to the adoption of the ordinance involved in the case of *Barbier* v. *Connolly, supra,* was the subject of inquiry in the case of *Ex parte Moynier, supra,* which was decided about a year earlier than the decision in *Barbier* v. *Connolly, supra.* It was held in the Moynier case that the prescribed hours for closing laundries (ten P. M. to six A. M.), within certain limits were related to and necessary for the proper police and sanitary condition of the city.

*In re Wong Wing, supra* (1914), involved a regulation prescribing the closing hours of laundries within the city limits of San Francisco. There the prohibition was directed against the washing, mangling, starching, ironing or other work on clothes between the hours of six o'clock P. M. and seven o'clock A. M. The court cited the three cases hereinabove discussed and came to the conclusion that those cases authorized the municipal legislative body to prescribe as the hours of labor in laundries the usual period of business activity in similar sorts of employment. While the hours of the cessation of labor in the laundries prescribed in the present case are the same as those involved in the Wong Wing case, the similarity in the prohibition ceased at that point and a distinction exists which must be noted and which may well be determinative of the invalidity of the present legislation. In the case before us, the prohibition is not limited to the washing and ironing of clothes

but extends as well to the keeping open of the establishment and to the soliciting, picking up or delivery of any laundry during the hours between six P. M. and seven A. M. The decisions in the cases hereinabove noted were based on the hypothesis that the restrictions addressed to the washing, ironing, etc., of clothes during the nighttime in designated areas had some reasonable relation to the prevention of fires at a time when fires were a greater hazard and menace to life and property. The reasonable relation of the prohibition to the exercise of the police power may be said also to be true, ostensibly at least, of the Wong Wing case. A similar ordinance today, as at the time when the foregoing cases were decided, depending on all of the facts pertinent to the inquiry, might nevertheless still be deemed to have sufficient relation to the preservation of life and property as to justify its enactment as a valid exercise of the police power. But no case has been presented which holds, and it is not seriously contended, that the extension of the prohibition to the keeping open of the establishment, and to the soliciting, picking up and delivery of. laundry, applied to all laundries in the city, evidences anything more than an intention to enact a law prescribing hours of labor in laundries without any relation to the exercise of- the police power in any sense independent of the regulation of hours of labor.

In *Yee Gee* v. *San Francisco,* 235 Fed. 757, the court differed in its conclusions with the result in the Wong Wing case and held that a regulation identical with that involved in the latter case, even though it extended only to laundering operations, was no more than merely a limitation upon the hours of labor with no relation to the exercise of the police power, and that as such it was an unreasonable and unwarranted intrenchment upon the liberty of the citizen in the conduct of his business. In discussing the application by this court in the Wong Wing case of the principles of the cases of *Barbier* v. *Connolly, supra,* and *Soon Hing* v. *Crowley, supra,* the court said at page 762: ''It will thus be seen that the Supreme Court of California rested its ruling largely, if not entirely, upon the authority of the Barbier and Soon Hing cases, under the assumption that the principles there announced had equal application to the regulation before them. With the greatest respect for the views

of that court, I think its opinion fails to take note of the very material difference between the two measures. In the one instance, the regulation was restricted in its application to certain specified and defined districts of the city, and prescribed a period of cessation from labor well within the acceptation of what would at once be regarded as having reasonable relation to the object sought, that of the protection of the public from the danger of uncontrolled fires. In the other, the regulation is made to apply to the entire limits of a great city, embracing a territory some ten miles wide by fifteen miles long, without regard to differing physical conditions obtaining therein, and with a limitation of the hours of labor to a period which, to say the least, having regard to the nature of the business, at once gives rise to a question in the mind whether it bears any reasonable relation to any conceivable necessity for protection to the public from such dangers. It seems to me that this radical difference between the two regulations may not be ignored. That the Supreme Court of the United States did not ignore it will at once appear from their discussion of the subject. They repeatedly refer to the fact that in the cases before them the regulation as to hours of labor applied only to certain specified limits within the city, and they construe its purpose to have reference to the special conditions existing in those districts.''

■ The fundamental law of the land has been held to be inconsistent with any restriction other than voluntary upon the particular hours of the day when a citizen may labor, when such restriction is in no sense otherwise related to an appropriate exercise of the police power. (*Lochner* v. *New York*, 198 U. S. 45 [25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133]; *Yee Gee* v. *San Francisco, supra; Ex parte Jentzsch*, 112 Cal. 468 [44 Pac. 803, 32 L. R. R. 664]; *Ganley* v. *Claeys*, 2 Cal. (2d) 266 [40 Pac. (2d) 817]; *Skaggs* v. *City of Oakland, ante*, p. 222 [57 Pac. (2d) 478]; *In re Boehme*, 12 Cal. App. (2d) 424 [55 Pac. (2d) 559]; *McDermott* v. *City of Seattle*, 4 Fed. Supp. 855; *Chaires* v. *Atlanta*, 164 Ga. 755 [139 S. E. 559, 55 A. L. R. 230].) It becomes apparent at once that, even if the restriction of the hours of labor as such were conceded, without more, to be within a legitimate exercise of the police power, nevertheless; before such a regulation may be deemed valid it must be

so enacted as to operate uniformly. As noted by Mr. Justice Field in the earlier case of *In re Quong Woo*, (1882) 13 Fed. 229, " . . . the business of a laundry—that is, the washing of clothing and cloths of various kinds, and ironing or pressing them to a condition to be used—is not of itself against good morals, or contrary to public order or decency. It is not offensive to the senses, or disturbing to the neighborhood where conducted, nor is it dangerous to the public safety or health. It would be absurd to affirm that it is." Remarks were added to the effect that the municipality has the power to regulate the method of operation and conduct so as to guard against any menace to the public health or safety. This the city of Oakland has done by the enactment of the other provisions of the ordinance in question.

Without extending further the discussion of an obvious matter it must be concluded that the reasons assigned in the decisions in the last cited cases answer in the negative all of the contentions made in support of the validity of the further provision relating solely to "Hours," and are pertinent and compelling in arriving at the conclusion that that section of the ordinance is an unreasonable restriction upon the rights of laundry owners, operators and employees in the city of Oakland, is in violation of article I, section 13, of the state Constitution and the Fourteenth Amendment to the federal Constitution, deprives the petitioner, of his liberty and property without due process of law and denies him the equal protection of the law.

It follows that the petitioner should be discharged from custody, and it is so ordered.