HEIRS OF VICENTE RODRÍGUEZ, Appellants, v. INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent.

No. 32. Argued May 9, 1938.—Decided November 9, 1938.

*Leopoldo Tormes García* for appellants. *M. León Parra* and *Luis Negrón Fernández* for the Industrial Commission and the State Insurance Fund, respectively. *E. J. Fonfrías* for claimants.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is a petition filed by the Heirs of Vicente Rodríguez to review an order of the Industrial Commission of Puerto Rico of the 4th of last February, in which it was concluded as follows:

"First, That Santiago Guzmán was working for his employers, Heirs of Vicente Rodríguez, at the time of the accident; second, that Santiago Guzmán suffered an accident while working for wages for his employers, Heirs of Vicente Rodríguez, in the course of an act or function inherent in his work and as a consequence thereof, the result of such accident being the loss of his life, for which reason he is en--

titled to all the protection afforded by Act No. 45 of April 18, 1935; third, that the employers, Heirs of Vicente Rodríguez, were employing more than four workmen at the time of the accident suffered by Santiago Guzmán, and were not insured with the State Insurance Fund, in violation of the provisions of Act No. 45 of April 18, 1935, and therefore said employers are liable for the accident in the instant case.''

The aggrieved party moved for a reconsideration and the commission denied the same by an order of February 15, 1938, whereupon the said party duly filed in this court the appeal provided for in section 11 of Act No. 45 of 1935, to promote the welfare of the inhabitants, etc. . . . Laws of 1935, p. 288.

The grounds of the appeal are nine. In the first five grounds the constitutionality of the Act is challenged in so far as it creates the Industrial Commission and the State Insurance Fund, it being alleged: (1) That the commission was without jurisdiction to take cognizance of this matter which is of a judicial nature as being an institution apart from the Department of Justice and established in contravention of section 37 of the Organic Act; (2) that the said commission was actually constituted to work as an Executive Department of the Insular Government, in contravention of said section 37 of the Organic Act; (3) that the State Insurance Fund and its manager, similarly authorized to function independently of the Treasury Department, were created in contravention of the Organic Act; (4) that Act No. 45 of 1935, whereby the Industrial Commission and the State Insurance Fund were created, tends to deprive citizens of their property without due process of law; (5) that powers are illegally delegated by such act.

■ The first question that arises when considering the above grounds is whether or not the appellants are precluded by their own acts from advancing the same.

In 71 C. J. 303, citing the cases of *Marshal Field* v. *Industrial Commission*, 137 N.E. 121, 305 Ill. 134; *Shoal Creek Coal Co.* v. *Industrial Commission*, 133 N.E. 218, 300 Ill. 551,

it is stated that "an employer who submits without objection to the jurisdiction of the Industrial Commission waives his right to insist that the statute purporting to confer such jurisdiction was an invasion of his constitutional right."

However, as the constitutionality of the act has been questioned and as arguments have been advanced showing an extensive study of the matter, the public interest requires that the situation should be clarified as soon as possible for the sake of the stability of our institutions.

The determination of the proceedings herein really required from the Industrial Commission the consideration of allegations, the hearing and weighing of evidence, and the application of legal provisions and judicial decisions, involving the exercise of powers which under our system of government are inherent in courts of justice. This is the reason why said body has been considered as being a *quasi* judicial one. However, such circumstance in itself does not imply the unconstitutionality of the commission because, although the latter has that character, the very law that created it provides for an appeal to judicial tribunals, thus reserving to the latter the last word in the exercise of the judicial power.

Recently in *Montaner* v. *Industrial Commission*, 52 P.R.R. 890, this court said:

"The legislator, as the regulating power of the organization created by him for the operation and application of the Workmen's Compensation Act, created the Industrial Commission and invested it with quasi judicial and quasi tutorial powers, so that it would be such a commission and not the ordinary courts of justice who should decide, in first instance, the controversies which might arise between the Manager, as executive officer, and injured workmen or their beneficiaries regarding the compensation to which they may have been entitled."

Shortly before, in *Caraballo* v. *Industrial Commission*, 51 P.R.R. 157, it had held "that the Industrial Commission is a *quasi* judicial body with full power to pass upon all questions of law and facts properly coming before it."

The establishment of such commissions or boards has become necessary by reason of the complexity and strenuousness of life, of the necessity for specialization, and of the speed and uniformity required in the settlement of the questions submitted to them. As stated by William R. Schneider on page 60 of Vol. I of his work, The Law of Workmen's Compensation, "Establishing a board does not violate the constitutional provision that no courts other than provided for by the constitution shall be established since the board is not a court and ample provision is made for review by the courts."

The creation and operation for years of bodies similar to our Industrial Commission in the States and Territories of the Union, without conflicting with the Constitution, is so patent that our island shall not become an exception, especially as our Organic Act contains no special provisions in opposition thereto. On the contrary, from its text, as a whole, from its special provisions and from the construction which the Supreme Court of the United States itself has put upon the sort of government established by the Congress for this island, it can be seen that in its essential principles and tendencies it is the same as that which obtains in the continental United States.

A few months ago the Supreme Court of the United States, in *Puerto Rico* v. *Shell Co.*, 302 U. S. 253, 261, speaking through Mr. Justice Sutherland, said:

"The aim of the Foraker Act and the Organic Act was to give Puerto Rico full power of local self-determination, with an autonomy similar to that of the states and incorporated territories. *Gromer* v. *Standard Dredging Co.*, 224 U.S. 362, 370; *Porto Rico* v. *Rosaly y Castillo, supra*, p. 274. The effect was to confer upon the territory many of the attributes of *quasi*-sovereignty possessed by the states— as, for example, immunity from suit without their consent. *Porto Rico* v. *Rosaly y Castillo, supra.* By those acts, the typical American governmental structure, consisting of the three independent departments—legislative, executive and judicial—was erected. 'A body politic'—a commonwealth—was created. 31 Stat. 79, sec. 7, c. 191.

The power of taxation, the power to enact and enforce laws, and other characteristically governmental powers were vested. And so far as local matters are concerned, as we have already shown in respect of the continental territories, legislative powers were conferred nearly, if not quite, as extensive as those exercised by the state legislatures."

It seems appropriate to quote also the words of Willoughby in his treatise "Constitutional Law," 1930 ed., p. 705, as follows:

"It will be observed that the doctrine here declared is with reference to matters involving 'public rights'. Thus a statute would undoubtedly be held unconstitutional which attempted to place in administrative hands the final determination of controversies between private individuals. However, as will later appear, especially in relation to employers' liability and workmen's compensation laws, the common-law rights and liabilities may be legislatively altered or even abolished provided there is substituted for them the adequate administrative remedies or defenses. The effect of such substitution, is, of course, to prevent judicial action with regard to whole classes of cases which, before such legislation, were justiciable in the courts, and to empower administrative agencies to give such relief or to impose such liabilities as are recognized and provided for in the acts."

The Industrial Commission of Puerto Rico is not, therefore, an illegal body because it functions as a quasi judicial body without being a court of justice and, in our judgment, it has full jurisdiction to pass upon the matter under consideration.

Nor is the commission, in our judgment, a separate executive department of the Insular Government, and its creation is not in conflict with section 37 of the Organic Act. The same thing may be said in regard to the State Insurance Fund. Such conclusions have been reached by us after a careful consideration of the organization and operation of both.

"No executive department not provided for in this Act shall be created by the Legislature, but the Legislature may consolidate departments, or abolish any department, with the consent of the President of the United States," says the

second paragraph of section 37 of the Organic Act. So that if it were a case of the creation of a separate department the appellant would be right; but, as already stated by us, it is not.

As expressed by its title, Act No. 45 of 1935 was passed in order to promote the welfare of the inhabitants of Puerto Rico regarding accidents causing death, or injuries, or diseases, to workmen in the course of their employment, and the power of our Legislature to enact such a law is unequivocally recognized by the tenth paragraph of section 2 of. the said Organic Act, thus:

"Nothing contained in this Act shall be construed to limit the power of the Legislature to enact laws for the protection of the lives, health, or safety of employees."

In the exercise of its powers our Legislature has repeatedly enacted workmen's compensation laws. Regarding Act No. 45 of 1935, which is challenged in the instant case, we find that mention is made from the start of the State Insurance Fund. In section 3 mention is made of the Industrial Commission to which, as stated, any workman or employee may appeal from certain orders of the Manager of the State Fund.

The act then specifies certain disabilities and compensations, etc., and section 6 thereof provides for "The office of the Manager of the State Fund, which is hereby created, in the Department of Finance which official shall be in charge of the following duties and functions":

After specifying such duties and functions it provides as follows: "A commission is hereby created in the Department of Labor, which shall be known as *Industrial Commission of Puerto Rico* and shall consist of three (3) commissioners appointed by the Governor with the advice and consent of the Senate, . . ."

The act goes on to regulate in detail the functions of the commission and of the Fund. There is no doubt whatever

that it clothes them with the freedom of action required by every competent organized body so that the proper responsibility may be exacted from it. It, however, expressly annexes them to two of the Executive Departments of the Insular Government, the commission to the Department of Labor and the Fund to the Treasury Department, according to their respective fields of operation. The connection of said bodies with their respective departments may be traced through the other sections of the act.

The fact that both the Fund and the commission can independently exercise the powers conferred on them by the act, without the intervention of the Treasurer or the Commissioner of Labor, respectively, does not convert them into new executive departments of the Government.

A consideration of the objection raised, to the effect that the creation of new executive departments was involved in the establishment of the commission and the Fund for the rendition of the social security service entrusted to them, serves to explain the statements in Corpus Juris when summarizing the jurisprudence regarding the constitutionality and validity of such statutes. Corpus Juris says:

"As was perhaps fairly to be anticipated from the novel, and in a sense revolutionary, character of compensation legislation, the constitutionality of the various statutes has been attacked on grounds as numerous and varied as have suggested themselves to the ability, and in some instances ingenuity, of counsel. Broadly, the enactment of workmen's compensation acts has been said to be within the legislative power of congress and of the states; and the general test has been laid down that compensation acts, to be within constitutional limits, must not be arbitrary, unreasonable or fundamentally unjust or oppressive. The rule that an act of the legislature will not be declared invalid on the ground that it is repugnant to some constitutional provision unless its invalidity is made to appear beyond a reasonable doubt has been applied to workmen's compensation acts, and has been held to apply with peculiar force to such acts; the presumptions are in favor of validity, the burden being on the party assailing the con-

stitutionality of the statute, and the contravention of the constitution must be clear and unquestionable before the act will be declared unconstitutional; thus, where a compensation act is reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, that construction will be adopted which will favor its validity and, although counsel place an erroneous construction on the statute, the court should not for that reason hold it unconstitutional, if the act properly construed is constitutional." 71 C. J. 251.

In support of the fourth ground, that is, that Act No. 45 of 1935 is unconstitutional because it tends to deprive citizens in general and the appellant in particular of their property without due process of law, there is invoked the mandatory character of the statute with citation of its sections 8 to 10, 15, 18, 19, 23 to 25, 27, and 29, bearing upon the power of the commission and the Fund to examine witnesses; to enter into agreement regarding the amount of the compensation; to finally settle controversies between workmen and the manager; to determine the compensation to be collected by the Treasurer from uninsured employers; to fine uninsured employers with more than four workmen in their employ; to require reports on pay-rolls, on assessment and levy of rates, and on the investment in bonds of the reserves of the Fund.

A study of those provisions shows that all of them are germane to the purpose of the statute and are reasonably necessary for the efficient rendition of the social services entrusted to the Fund and the commission, and that all of them afford to the parties concerned the guaranties of due process of law. None has been shown to be so arbitrary as to violate the constitutional rights of citizens. They confine themselves to the establishment of adequate bases on which to demand the efficient performance of the duties involved in the recognition and enjoyment of such rights in a social body duly constituted.

In *Mountain Timber Co.* v. *State of Washington,* 243 U.S. 219, 238, the Supreme Court of the United States, upholding the validity of a compulsory compensation law, said:

"The authority of the States to enact such laws as reasonably are deemed to be necessary to promote the health, safety, and general welfare of their people, carries with it a wide range of judgment and discretion as to what matters are of sufficiently general importance to be subjected to state regulation and administration. (Citations.) 'The police power of a State is as broad and plenary as its taxing power.' . . . In *Barbier* v. *Connolly,* 113 U. S. 27, 31, the court, by Mr. Justice Field, said: 'Neither the (fourteenth) amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. . . . the matter of compensation for accidental injuries with resulting loss of life or earning capacity of men employed in hazardous occupations is of sufficient public moment to justify making the entire matter of compensation a public concern . . . "

Nor is the law, finally, unconstitutional as alleged in the fifth ground assigned, to wit, because it delegate legislative power on the executive branch of the Government, that is, the Fund and the commission, regarding the special subject matter of levying taxes, by allowing them to do so at their discretion, without uniformity and even in a confiscatory manner.

The appellants go too far in their conclusions. Our law follows in this particular well-established precedents. The State Fund in its proceedings follows rules and principles which it applies in accordance with its findings of fact, and its action can be reviewed by the commission and even the latter's decision is reviewable by this court. *Montaner* v. *Industrial Commission, ante,* p. 174.

On page 58 of Vol. I of the work "Workmen's Compensation Law", by Schneider, *supra,* it is stated as follows:

"Provisions of the act which authorize state boards to levy insurance premiums, on employers covered by the acts, of the nature of an indirect tax, to collect the same and place them in a state insurance fund, out of which said boards pay compensation to injured workmen, or to dependents do not violate the 'due process of law' provisions of the State and Federal Constitutions, . . ."

In *State* v. *Hughes Electric Co.*, 199 N.W. 128, it was held as follows:

"In enacting a workmen's compensation law the Legislature may refrain from classifying employments and determining hazards to workmen engaged therein, and from fixing rates and premiums for insurance, leaving such details to an administrative board under proper rules and directions; in performing its duties such administrative agency must follow the routes and direction of the Legislature to give validity to its acts."

It was held in *Miller-Todd Coal Co.* v. *State Compensation Com'r*, 175 S.E. 856, that:

"We are of opinion that the delegation of specific authority to the commissioner to classify, reclassify, and to create **additional** groups, or classes of industry for the purpose of assessments (Code 1931, 23–2–4), and to create and maintain a solvent fund (Code 1931, 23–2–5), warranted the promulgation of the rule complained of. And it is well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action. As stated in a note, 12. A.L.R. 1435, 1447, 'Some situation require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare.' "

See *M. Taboada & Co.* v. *Rivera, Com'r*, 51 P.R.R. 246.

Having concluded that the act is constitutional, let us proceed to consider and determine the other assignments of error on which the appeal is based.

█ The petitioners maintain that Heirs of Vicente Rodríguez is not an artificial person, entitled to sue and be sued, and that even if it were it has not been shown who are the

persons constituting the same, or that it was the employer of the deceased workman, or that it employed more than four workmen, or that Francisco Rodríguez Torres can bind the same by his acts. They charge the commission with passion, bias, and prejudice in weighing the evidence.

The appeal in which such questions are raised was brought by the "Heirs of Vicente Rodríguez" thus: "Now comes the petitioner, the alleged employer, Heirs of Vicente Rodríguez, through the undersigned attorney and respectfully alleges."

So that the very entity which maintains not to be an artificial person entitled to sue and be sued, is the one to bring as such the appeal, without mentioning the persons constituting it.

Consequently, if the above theory were strictly applied the appeal should be dismissed because the same had not been brought by a person, either natural or artificial, entitled to appear in court.

In *Arvelo et al.* v. *Banco Ter. y Agr.*, 25 P.R.R. 677, 685, this court, through Mr. Chief Justice Hernández, expressed itself as follows:

"The rights to the succession of a person are transmitted from the moment of his death. Article 657 of the Civil Code of 1899. Succession is granted either by the direction of the man as expressed in a will or, in its absence, by provision of law. Article 658. Heirs succeed the deceased in all his rights and obligations by the mere fact of his death. Article 661. The articles cited are equivalent to sections 665, 666 and 669 of the Revised Civil Code.

"Under our laws a succession has no existence as a juridical person. A succession may be made a party plaintiff or defendant, but it must be particularized or individualized by specifying the names of the persons who compose it. It is not a legal entity independent of the heirs, who constitute it and who should appear as plaintiffs or defendants.

"In disposing of the case of *Dapena* v. *Estate of Dominicci* on February 14, 1907 (12 P.R.R. 64), this court said that where a complaint is brought against an estate, it should designate the name of each of the heirs or give some reason to justify the omission; and

in accord with that doctrine this court, in deciding the case of *Orcasitas* v. *Registrar of Property,* 21 P.R.R. 523, expressed itself as follows:

" 'We agree with the registrar that if the citing or summoning of the succession was necessary, the composition of such succession should be made to appear, so that the registrar might determine whether there had been proper process.' "

That being so, it is clear that the title of the proceeding and the final order of the commission should have expressed the names of the heirs making up the succession. We think, however, that as their names appear from the record, the defect is not fatal and the decision may be properly corrected.

From an examination of the record of the proceedings we find that the first paper is a letter subscribed by José Rodríguez to the chairman of the commission beginning as follows:

"Sir:

"On the 26th of July of the current year, 1935, Santiago Guzmán, a laborer, a resident of Guayanilla and domiciled in the Consejo barrio of said district, was caught by an ox while the latter was being yoked in preparation for the day's work in the tilling of ground belonging to the Estate of Rodríguez which consisted of Manuel, Francisco and others, residents of Guayanilla and property owners in the Consejo barrio of said district."

Other papers further mention the succession of Vicente Rodríguez, and on page eleven there appears the affidavit of Francisco Rodríguez, paragraphs 1, 2, 3, 4, 9 and 10 of which read as follows:

"That I am one of the members of the Succession of Vicente Rodríguez.

"That the Succession of Vicente Rodríguez consists of eleven people named as follows: Ramona Torres, Manuel Rodríguez, Antonio, Dolores, Consuelo, María, Carmen, Virginia, Cándida, Carlos and the undersigned, all of whom bear the family name of Rodríguez.

"That I have leased both properties located in the wards of Consejo and Jagua of the Municipality of Guayanilla and owned by the above mentioned heirs.

"That I represent the succession and am in charge of everything connected with said properties.

"That owing to the fact that I am one of the parties making up the Succession there is no deed or instrument whatever of the lease referred to, it being a verbal agreement within the family and approved by all.

"That on the 26th of July, 1935, Santiago Guzmán, a laborer, met with an accident while trying to yoke one of the oxen belonging to the undersigned for the tilling of the parcel of land which I had verbally permitted him to till for two years for his own benefit."

The above appears from the preliminary investigation. It is stated on page 35 of the record of the proceedings before the commission that there appears "the employer, Heirs of Vicente Rodríguez, through Francisco Rodríguez, assisted by his attorney Leopoldo Tormes García, submitting the testimony of . . ." His defense, as set up by his attorney, was to the effect that "neither on July 26 nor at any other time in 1935 or prior thereto the Heirs of Vicente Rodríguez were the employers of Santiago Guzmán and that Santiago Guzmán was an occupier at sufferance of a piece of land which Francisco Rodríguez had leased from the Heirs of Vicente Rodríguez, and that anything grown on that land was for the benefit of Santiago Guzmán, without any intervention whatever at all regarding such piece of land on the part either of the Heirs of Vicente Rodríguez or of Francisco Rodríguez."

The adverse party likewise introduced evidence. All the evidence heard was weighed by the commission which decided the conflict between both against the appellant. We have examined the same and we do not think that we could find the same so deficient that its weighing by the commission in the way it did was such an error of law as to be ground for the review sought. Section 11 of Act No. 45 of 1935, p. 288.

In virtue of all the foregoing, the review sought must be denied.